TOWER *v.* UNITED STATES (No. 1748).[1]

1. EVIDENCE—JUDICIAL NOTICE.

The court may take judicial notice that the chief uses to which farmers devote shovels are planting fruit trees, truck gardening, spreading fertilizer, digging potatoes, and digging and keeping in repair ditches for irrigating or drainage purposes.

2. SHOVELS—AGRICULTURAL IMPLEMENTS.

Long-handled, round-point polished shovels and D-handled, square-point polished shovels are shown by the evidence to be chiefly used by farmers for agricultural purposes. They are admissible free of duty as agricultural implements (par. 391, tariff act of 1913), and not dutiable as metal articles (par. 167).

United States Court of Customs Appeals, January 22, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7943 (T. D. 36586).

[Reversed.]

*Crim & Wemple* (*William L. Wemple* of counsel) for appellant.

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

[Oral argument October 24, 1916, by Mr. Wemple and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Eight dozen long-handled round-point polished shovels and 6 dozen D-handled square-point polished shovels were classified by the collector of customs as articles of metal not specially provided for

---

[1] Reported in T. D. 36981 (32 Treas. Dec., 122).

and assessed for duty at 20 per cent ad valorem under that part of paragraph 167 of the tariff act of 1913 which reads as follows:

167. Articles or wares not specially provided for in this section; * * * if composed wholly or in chief value of iron, steel, * * * or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

The importer protested that the goods were agricultural implements, and claimed that they were therefore free of duty under paragraph 391 of the free list, which reads as follows:

391. Agricultural implements: Plows, tooth and disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, * * * wagons and carts, and all other agricultural implements of any kind and description, whether specifically mentioned herein or not, whether in whole or in parts, including repair parts.

On the hearing before the Board of General Appraisers five witnesses—Edward W. McCarty, George Holmes, R. Seagraves, Frank J. Semple, and Paul A. Griffith—testified on the part of the importer. Edward W. McCarty, a shovel manufacturer of Hamilton, Canada, stated that prior to importing the goods he had made a very careful investigation of the use and distribution in the United States and Canada of polished spades and shovels. He said that his investigations brought him in contact with various hardware concerns and distributing houses in the United States, such as E. C. Simmons, of St. Louis; Belknap, of Louisville; Supplee-Biddle and Shields & Bro., of Philadelphia; Grerar, Adams & Co., of Chicago; the Pacific Hardware Co., and hardware concerns in Minneapolis. His investigation was not confined to wholesale houses, but extended to traveling salesmen for wholesale establishments, to retail dealers who sell the shovels to the consumer, and to the farmers who used the shovels. He testified that 80 per cent of polished spades and shovels are used by the farmer. He said that the long-handled polished shovel is employed by the farmer in the digging of ditches, the planting of trees, and in the building of fences, and that the D-handled shovel is used by the farmer for spading in the nurseries or in the fields or about the stable, and for all sorts of purposes. According to this witness, railroads and supply houses do not buy the polished shovel for track work, inasmuch as the polished shovel is not as strong or as heavy or as durable as D-handled square black shovels which are made and used for track work. He asserted that of all the shovels imported by his concern only about 2 per cent were black shovels and that one-half of the black shovels went to railroad contractors and railroad supply houses.

George Holmes testified that he was a wholesale dealer in hardware and sold both black and polished shovels to the retail trade. He said he sold shovels to retailers of Germantown, Allentown, and Chester, Pa., and that his customers ranged from Atlantic City, N. J., to Reading, Pa. He said that on the basis of orders placed

with him by retail dealers and of sales made by himself he could say that polished shovels were sold by him largely to gardeners and that black shovels were sold to contractors and railroad constructors. He said that the shovel used in flower gardens, for nursery purposes, and for garden truck, is a polished shovel, and that the shovel which had the largest sale was the D-handled round-point polished shovel.

R. Seagraves testified that he had been identified with the hardware business for 20 years. For some four years of that period he was engaged in the retail business in an agricultural district in New Jersey, a district largely devoted to farms and dairies. He testified that as a retailer he handled both polished and black round-pointed and square-pointed D-handled shovels, and that the great mass of his sales was to farmers who demanded and purchased polished shovels. He said that he was at the time of testifying the buyer for the Supplee-Biddle Hardware Co., a wholesale concern which sold to the retail trade as far south as Florida and as far west as Illinois. He stated that his buying depended on the orders sent in and that from such orders he was able to tell whether there was a greater or less demand for a special kind of shovel in particular districts. The witness was posted as to the uses to which shovels were put, not only by his own experience, but also by reports of salesmen of his firm, as well as by letters from the houses with which his firm dealt, and on' that experience and information he averred that the shovel used in agricultural districts was the polished shovel. He said that the shovel sold in the coal region differed from that sold in the farming districts, and that the Supplee-Biddle Co. sold more polished than black shovels to the farming communities and more black than polished shovels to mining districts. He declared that the sales of polished shovels to the farming trade was larger than the sales of such shovels to any other trade. He was unable to give any information as to the kind of shovels used by contractors, inasmuch as the Supplee-Biddle Co. had very little business with railroad, paving, and sewer contractors, and because that class of trade generally dealt directly with the manufacturer and not with his concern.

Frank J. Semple testified that he was connected with the E. C. Simmons Hardware Co., wholesale dealers in hardware, and that that firm dealt with more than 700 other concerns located all over the United States. He said that he had been a salesman of hardware for 20 years; that he was then in charge of the selling department of the Simmons Hardware Co.; that by reason of his experience as a salesman and in the sales department, as well as by reason of the information acquired by coming in contact with the trade, and by trips and discussions had with salesmen, he had become acquainted with the class of customers to which D-handled polished round and square shovels were sold, and could say that that class of goods was sold almost exclusively to the retail trade in agricultural districts.

Paul A. Griffith testified that he had been connected for 26 or 27 years with Shields & Bro., wholesale and retail hardware merchants, and that during that time he worked as salesman, made up orders for hardware, and traveled a little for the firm. He said that Shields & Bro. carried D-handled polished and D-handled black shovels; that D-handled polished shovels were sold chiefly in agricultural communities. He stated that of the shovels sold by his firm about 60 per cent were polished shovels and about 40 per cent black shovels, and that more polished shovels than black shovels were sold in agricultural districts. He said that as a rule contractors buy black shovels and that he did not know of any use of polished shovels except by agricultural interests, and that that statement was based on his 15 years' experience in making up orders for hardware and on conferences had with the firm's customers.

Five witnesses—Andrew Z. Boyd, Arthur G. Sherman, Philip Schaeffer, John M. Kohlmeier, and C. H. Lambelet—testified on the part of the Government.

Andrew Z. Boyd said that he was the exclusive eastern sales agent of the Baldwin Tool Works, Parkersburg, W. Va., and that that firm had been dealing in merchandise such as that in controversy for 10 years; that such merchandise was sold in carload lots by his firm to the jobbing trade, large retailers, railroad companies, construction companies, etc. He said, in effect, that the long-handled polished shovels and D-handled polished shovels were chiefly used for railroad purposes, general construction work, engineering work, ordinary laboring uses, and as a tool for the Italian laborer in subway work. He was of the opinion that 70 per cent of such shovels were consumed in construction work, and he knew of no other uses to which such shovels were put. On cross-examination, Mr. Boyd said that the shovels sold by him to railroads were largely black-finished shovels, and that the Baldwin Tool Works sold more black-finished shovels to the general trade than any other finish. He also stated that contractors usually used the black shovel and that hardware stores usually used the polished shovel. He admitted that his firm did not sell either long-handled or D-handled polished shovels of the type imported. He declared that he knew the uses and consumption of shovels throughout the United States, and that farmers used shovels like the long-handled ones imported, but subsequently stated that the farmer used the strap and not the socket shovel, because the socket shovel cost too much money and the farmer would not buy it. He said, however, that socket shovels, such as those involved in the protest, were suitable for the farmer's use.

Arthur G. Sherman testified that in the Eastern States and for the export trade he was general sales manager of the Ames Shovel & Tool Co. He said that his firm had sold articles similar to those im-

ported; that he had an experience of 35 years in dealing with shovels; that long-handled round-point polished shovels and D-handled square-point polished shovels are used in copper, silver, and coal mines for digging gravel, sand, or earth, for track work on railroads and other purposes in the same line, and in many other ways. He stated that while he had never been a farmer, he knew in a general way that shovels were used on farms. In his opinion, the use of shovels on farms as compared with other uses was very small. That opinion was based on his experience in selling shovels, on information derived from the users of the goods, and from conferences had with members of the board of general sales managers, the members of which exchanged information in regard to output and experience in distributing the goods. He said that the large percentage of the shovels sold by his company did not go to farming districts and that the proportion of shovels sold in cities to contractors was very small. He was positive that the great quantities of shovels go to railroads, mines of all kinds, and to contractors who use them very largely where they can not use steam shovels. In speaking of the proportion of shovels furnished to farmers, cities, railroads, and contractors, the witness acknowledged that he was speaking of both black and polished shovels.

Philip Schaeffer testified that he was connected with the firm of Fairbanks & Co., of New York City, and had been with that firm for a period of 15 years. Prior to that time the witness had been employed by T. M. Motley & Co., a contractor's supply house. The experience of the witness in the hardware business covered a period of about 30 years and was confined to New York City and its vicinity within a radius of 100 miles. He said on direct examination that the major portion of long-handled and D-handled polished shovels were sold by Fairbanks & Co. to railroads, contractors, electric-light companies, and gas companies. On cross-examination, however, he admitted that the shovels sold to railroad contractors were black shovels almost exclusively, and that about an equal number of black and polished scoops were sold to manufacturing concerns having large steam plants. He stated that the railroads buy black square-point and round-point shovels and that he was of the impression that they are the largest users of shovels. He believed that the black was thicker and more durable than the polished shovel, and that the polished shovel "goes through solid ground easier" than the black shovel. He said that foundries usually used polished shovels.

Joseph Kohlmeier testified that he had been a retail dealer in hardware for a period of 30 years, and that his place of business was located at Third Avenue and Sixtieth Street, New York City. He said that he dealt in polished and not in black shovels; that he had very little farming trade; that he sold some shovels to the Long Island Railroad Co., and that most of his trade was with general contractors, Italians,

etc. On cross-examination he admitted that the contractors bought most of their goods from larger concerns than his, but that when they were in his neighborhood and wanted a few shovels in a hurry they came to him and were willing to take anything he might have. He said he handled about 75 dozen long-handled and D-handled polished shovels a year.

C. H. Lambelet testified that he was a salesman for the Wyoming Shovel Works, manufacturers of shovels, scoops, and spades. He said that the firm dealt in long-handled and D-handled polished shovels of the type of those imported. He declared that shovels are used chiefly in railroad work, contracting, mining, and in industrial work; that the shovels with which he had experience were mainly black, and that the percentage of polished shovels used as compared with black shovels was small. He stated that polished shovels would be used where the material to be moved would possibly stick or adhere to the blade, and that polished shovels would be suitable for foundry work "on account of the sand not adhering when smoothing it out."

On the evidence submitted by the importer and the Government the board found that shovels of the class of those imported and like shovels were "chiefly employed in operations other than agricultural in character, such as mining, building, railroad construction and repair work, in digging excavations, ditches, trenches, post holes, etc."

We think that the testimony in the case clearly establishes that shovels as a class of implements are not chiefly used in agricultural operations. When it comes, however, to the special kind of shovel known as the long-handled polished and the D-handled polished shovel, we are satisfied that it was shown by the weight of the evidence that long-handled and D-handled polished shovels are largely sold in agricultural districts and are chiefly used by farmers. Five witnesses who testified to that effect on behalf of the importer were, it is true, flatly contradicted by three of the Government witnesses, who testified that polished shovels were used in railroad, general construction, mining, engineering, and subway work, and by manufacturing plants. That testimony of these three witnesses raised a conflict, the resolution of which by the board we would be much disposed to accept were it not for the fact that two of these very same witnesses testified at one stage or another of their examination that shovels purchased and used by railroad companies and contractors were largely—almost altogether—black finished and not polished shovels, thereby to a very material extent corroborating the importer's witnesses, who declared that railroad companies, contractors, and mining companies, the largest users and consumers of shovels, purchased and used a black-finished shovel almost exclusively. Two of the witnesses for the Government other than the

three just mentioned furnished no information of value in determining the chief use of *polished* shovels. One of them was a small retail dealer in the city of New York who handled about 75 dozen polished shovels a year, and who sold them to contractors who bought most of their shovels from larger concerns than his and simply came to him when in a hurry for shovels.

The other witness testified to no more than that shovels in general were mainly used in railroad, contracting, mining, and industrial work, and that, as compared with black shovels, the use of polished shovels was small. That testimony is entirely consistent with the claim of the importer that polished shovels are chiefly sold to farmers and used by them. It was held by the board, however, and is now contended by the Government, that the fact that polished shovels are sold to farmers can not be accepted as proof that such shovels are actually used by the farmer in agricultural operations. We do not think that either the holding of the board or the contention of the Government can be sustained, inasmuch as there is uncontradicted evidence in the record which tends to show that farmers use the long-handled and D-handled polished shovels for planting fruit trees, for the digging of ditches, and for the building of fences to protect crops, and that the D-handled shovel is used for spading in nurseries, in the fields, and about the stables. Even if there were no evidence showing the purposes for which farmers employed shovels, we think we might well take judicial notice of the fact that they are chiefly used by farmers for planting fruit trees, truck gardening, spreading fertilizer, digging potatoes, and digging and keeping in repair ditches for irrigating or drainage purposes. In our opinion, it is as much a farm tool as is the spade, the use of which in farming operations is more limited than is that of the shovel.

Inasmuch as it is established by a preponderance of the evidence in this case that long-handled and D-handled polished shovels are chiefly used by farmers, and inasmuch as we are satisfied that farmers use such shovels chiefly for agricultural purposes, we are of opinion that the goods which are the subject of this appeal are agricultural implements and are therefore entitled to free entry.

The decision of the Board of General Appraisers is *reversed.*