(C.D. 4232)

NEW YORK MERCHANDISE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 14, 1971)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* and *Brian S. Goldstein* of counsel) for the plaintiff.
*L. Patrick Gray III*, Assistant Attorney General (*Ralph Bontempo* and *Harold L. Grossman*, trial attorneys), for the defendant.

Before RAO, Chief Judge, FORD and NEWMAN, Judges

NEWMAN, Judge: The merchandise in these three consolidated protests consists of certain bathroom accessories, as follows:

> Wall hooks or coat hangers
> Towel rings
> Towel bars
> Toilet paper holders
> Standing towel holders on a base
> Soap dishes

The articles enumerated above were composed of polished or antiqued brass and were ornamental in design. They were imported from Japan during the years 1959 through 1961 and entered at the port of New York. The collector assessed the goods with duty at the rate of 19 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, for manufactured articles, composed wholly or in chief value of brass, not specially provided for.[1]

Plaintiff claims that the merchandise is properly dutiable at the rate of 12½ per centum ad valorem under the provision in paragraph 339 of said tariff act, as modified by T.D. 54108, for brass household utensils.

We have concluded that the protests should be sustained.

---

[1] In addition to assessment of customs duties, an internal revenue tax (copper tax) of 1.275 cents per pound was imposed pursuant to 26 U.S.C. § 4541(2), as modified by T.D. 54108, but is not controverted.

### THE INCORPORATED CASE

The same issue of law and fact was presented in *New York Merchandise Co., Inc.* v. *United States*, 62 Cust. Ct. 674, C.D. 3847 (1969), the record of which has been incorporated into the record of this case.

In the incorporated case, the merchandise was the same in all material respects as that now before us. In overruling the protests, the court (Rao, C. J.) found "that although plaintiff has established that the articles in question are utensils [rather than fixtures], it has failed to prove that they are chiefly used in the household" (*Ibid* at 681).

### THE ISSUE

At the trial, counsel for the respective parties stipulated that the imported articles "are designed for use in bathrooms, and the narrow issue which remains in this case is whether or not they are chiefly used within the household" (R. 43–44).

### THE RECORD

In addition to incorporating the record in the prior *New York Merchandise* case, plaintiff called two witnesses and introduced seven exhibits. Plaintiff's witnesses were: Stanley Roshkind, an assistant buyer for plaintiff during the years 1958 to 1965, and plaintiff's buyer at the time of trial; and Eugene Bodenheimer, a salesman for some forty years, who sold housewares, giftware and toys throughout the United States.

Defendant presented no evidence.

The testimony of plaintiff's witnesses is summarized below:

Plaintiff is engaged in importing and selling notions, novelties, housewares and brasswares to retail stores, discount houses, chain stores and department stores throughout the United States. Neither of plaintiff's witnesses was aware of any other importers of the type of brassware involved in this case during the period of 1958 to 1963. The dollar volume of the instant merchandise, imported from 1959 to 1963, was "about one hundred thousand dollars or one hundred twenty five thousand dollars".

Plaintiff's customers included such firms as G. C. Murphy Company, Rose Merchandise Company, Newberry, Fortunoffs, and Foster and Gallagher. These companies sold the imports to the ultimate consumers by mail order or through their giftware or houseware departments. So far as Mr. Roshkind knew, plaintiff's customers did not resell the articles to wholesalers or commercial enterprises. The articles were sold in stores as "bathroom accessories", and with the exception of the standing towel holder, they must be affixed to a wall with screws.

Plaintiff's witnesses testified they had observed the merchandise in the bathrooms of homes located in Portland, Oregon; Brooklyn (New York City); Nassau and Sullivan Counties in New York State; McKeesport, Pennsylvania; and Chicago, Illinois; that they had "never" seen the merchandise used in the bathrooms of hotels, motels, restaurants, or business offices; that plaintiff had never sold the articles to such establishments; that most hotels, motels and restaurants have tiled bathrooms, and the imported "screw-on" type items cannot be used in such bathrooms; and that in hotels, motels and restaurants the tiled bathrooms have receptacles and other articles "attached right on so they can't be taken away", while the instant merchandise is easily pilferable.

Further, Roshkind testified as follows (R. 35–36):

Q. As a commercial reality, could you tell us, based on your knowledge and experience, as part of your duties, what type of customers this [imported merchandise] is intended to be used for?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A. I would say it would be to the home owner, the people who have their own homes or their own apartments, for the simple reason that the majority of the merchandise was sold through mail order, *direct mail order which is mailed to the housewife*, basically. The merchandise that I have sold directly from the place to the customers that came in went to the retail stores and was fitted into that department, in the *gift department or the bathroom department*. [Emphasis added.]

Bodenheimer stated that the standing towel holder and the towel ring "are for guest towels and they wouldn't have any use in a hotel bathroom". Respecting the standing towel holder, Bodenheimer further testified (R. 58):

*If the bathroom didn't have an attendant this item would be out of there in two minutes.* No restaurant owner would put it in or keep it there. First of all, he doesn't supply these little small hand towels, in the first place. [Emphasis added.]

### Chief Use in Household

Plaintiff relies upon the testimony of its two witnesses, which now assertedly establishes that the bathroom accessories were chiefly used in the household. Based upon the character of the articles, the testimony of plaintiff's witnesses, and the absence of any rebuttal evidence by defendant, we are persuaded that the merchandise was chiefly used in the household.

Even assuming *arguendo* that the testimony falls short of establishing that the bathroom accessories were chiefly used in homes, we feel that plaintiff's claim should nevertheless be sustained. In our

view, the character of bathroom facilities found in homes, and in such commercial establishments as hotels, motels, and restaurants in the United States, is a matter of common knowledge in this era of great mobility, and therefore is an appropriate subject for judicial notice. On that alternative basis, we find that the instant accessories were chiefly used in household bathrooms, rather than in those of the above mentioned commercial establishments. Cf. *Tanross Supply Co., Inc.* v. *United States*, 58 CCPA 26, C.A.D. 1000 (1970); *Tower* v. *United States*, 7 Ct. Cust. Appls. 408, T.D. 36981 (1917).

### "Utensils" vs. "Fixtures"

Despite the fact that counsel for the respective parties stipulated at the trial that the issue in this case was narrowed to whether the articles were chiefly used in the household, defendant argues in its brief that the articles are "fixtures". In view of the stipulation limiting the issue, the "fixture" question is deemed not before us. We nevertheless point out that defendant's contention was specifically rejected in the prior *New York Merchandise* case. Seeing no error in that determination, we would adhere to that holding in any event.

The protest is sustained, and judgment will issue accordingly.