BEFORE THE SECOND DIVISION, JANUARY 24, 1952

**No. 56297.**—S. S. Kresge Company *v.* United States, protest 164259–K (New York).

RAO, Judge:  This is an action for the recovery of excess duties alleged to have been erroneously assessed by the collector at the port of New York against

an importation of sea grass mats. The articles in question were classified as "all other floor coverings not specially provided for" and assessed with duty at the rate of 20 per centum ad valorem in accordance with the provisions of paragraph 1021 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. In the protest filed by the importer, it is claimed that the merchandise so classified is properly dutiable at only 12½ per centum ad valorem, pursuant to the provision in paragraph 1537 (a) of said act, as modified by said trade agreement, for manufactures of sea grass.

The pertinent tariff provisions are phrased as follows:

Paragraph 1021, as modified by T. D. 51802, *supra*:

All other floor coverings not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other _____ 20% ad val.

Paragraph 1537 (a), as modified by said trade agreement:

Manufactures of bone, grass, sea grass, horn, palm leaf (except raffia), straw, or whalebone, or of which these substances or any of them is the component material of chief value, not specially provided for_____12½% ad val.

A sample typical of the importation at bar was introduced in evidence as plaintiff's exhibit 1. It is a varicolored oval mat, 18 by 36 inches in size, and is conceded to be composed in chief value of sea grass, a vegetable fiber. Four witnesses were called, two by each of the parties, to testify concerning the use of merchandise like the exhibit in evidence. The two witnesses for the plaintiff were employees of the plaintiff, a 5-and-10-cent retail syndicate; those called by the defendant were employees of George E. Mallison Co., Inc., a concern which handles all types of floor coverings.

Plaintiff's witness, William Wolfle, in charge of plaintiff's import department, and with that company since 1914, stated that he was the person who effected the importation of the instant articles, and that he has been familiar with their use for 25 or 30 years. His familiarity therewith did not necessarily derive from his business experience, except to the extent that he knew the articles were sold in early spring. It stemmed rather from personal observation "dozens of times," "possibly a hundred times" of similar articles in the city of Detroit, around the lake in the upper part of Michigan, and 27 years ago in Baltimore. As to what that use was, this witness stated that he had seen such articles "on porches in front of the doors or on back stoops in front of the door or in similar places"; that they were always used by people for wiping their shoes or wiping sand from their feet before entering a house; and that he had never seen them used in any other way. It was this witness' opinion that these articles are like cocoa fiber mats, simply door mats, and that they would not be practical inside the house.

Joseph F. Mitchell, district merchandise manager of S. S. Kresge Company, in its employ for 25 years, stated that he had been familiar with articles like plaintiff's exhibit 1 for 25 years, during which time he had seen them used at summer cottages in Portsmouth, R. I., and at West Yarmouth, Mass., on about one-half dozen occasions, such use being only as a door mat, and never for any other purpose. This witness further testified that he had sold these articles in Richmond Hill and Flushing, N. Y., in Fall River, Mass., and in Vermont, and had seen them advertised and displayed in various cities in upstate New York as door mats.

For the defendant, William M. Brown, president of George E. Mallison Co., Inc., testified that he had been associated with that company since 1934, spending most of that time in the Orient as a buyer. He stated that he was familiar with plaintiff's exhibit 1 and its use, although not on or about June 17, 1930, having purchased such articles by the carloads; that it is known in the trade as a fancy twisted oval sea grass mat, hemp warp, and comes in various sizes from 17 by

29 inches, oval, to 12 by 18 feet, rectangular; that he had seen it used four or five times in the South and on Long Island in homes, under sinks, in cellars, where there is dampness, and also outside the door. In addition, on one or two occasions, he had seen them used as scatter rugs, that is, thrown down on the floor.

John M. Hartling, associated with George E. Mallison Co., Inc., for 33 years, who had done some selling for that company at its show rooms, testified that he was familiar with articles like plaintiff's exhibit 1 as far back as 1920; that he purchased such articles in China, and sold them to leading department stores and to other firms handling floor coverings; and that they were bought and sold in the United States as floor coverings. With respect to their use, this witness stated that he had seen articles of the size of plaintiff's exhibit 1 about one dozen times in Canada, Vermont, New Hampshire, Pennsylvania, and throughout Long Island, both indoors and outdoors, as floor coverings, inside rooms, alone and with others, at doorways, in kitchens, and as a throw rug between adjoining living and dining rooms.

Some effort was made to draw from the various witnesses admissions with respect to the similarity and the differences between mats and rugs, but in view of the conclusions reached by us in this case, an examination into the question is unnecessary.

During the course of the trial counsel for the plaintiff advised the court that plaintiff's claim that the articles at bar are not floor coverings was predicated partly upon the fact that they are not used indoors and partly because they are never used to cover floors, but are in fact door mats used for the purpose of wiping one's feet. The brief of the plaintiff tends to elaborate this theory. In explanation of the law pertaining to the disposition of the merchandise at bar counsel states:

It is a well established principle in the interpretation and application of customs laws that where a provision of the Act suggests use, it is the chief use of the article that controls its classification (*Meyer* v. *Cadwallader*, 89 Fed. 963; *United States* v. *Dyson Shipping Co.* 27 C. C. P. A. (Customs) 260, C. A. D. 96) and that the chief use must be shown as of the date of the passage of the Act (*United States* v. *F. W. Meyers & Co., Inc.* 24 C. C. P. A. (Customs) 464, T. D. 48913; *United States* v. *Dyson Shipping Co., supra.*)

The provision for "floor coverings" contained in paragraph 1021 of the Tariff Act of 1930 is a provision which suggests use (*M. A. Katz & Co.* v. *United States* 4 Cust. Ct. 327, C. D. 354). Therefore, only such evidence as tends to establish the chief use of this article at and immediately prior to June 17, 1930, is competent, material and relevant to the issue herein.

We are in agreement with the foregoing expression of the legal principles applicable to the instant case, but are of opinion that the evidence adduced at the trial is insufficient to overcome the presumption of correctness which attaches to the decision of the collector of customs.

When the collector classified these articles as floor coverings, he was presumed to have found every fact to exist which was necessary to sustain his classification. *United States* v. *Lilly & Co. and Parke, Davis & Co.*, 14 Ct. Cust. Appls. 332, T. D. 41970; *United States* v. *I. Magnin & Co., Inc.*, 21 C. C. P. A. (Customs) 77, T. D. 46394. In the present instance, then, his act presupposes a finding that articles like those at bar were chiefly used as floor coverings throughout the United States, at and prior to the date when the Tariff Act of 1930 was enacted. And the burden rested upon the plaintiff to negative that finding.

Chief use of a class of merchandise is neither proven nor refuted by testimony that in certain local areas in the United States, the merchandise has but one use and no other, unless it also be established, as a fact, that elsewhere in the United States it is not commercially known. *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T. D. 42240. Otherwise, it is incumbent

upon a protestant to present evidence of its use *throughout the United States* as of June 17, 1930.

Such evidence is singularly lacking from the record in this case. Plaintiff's witness Wolfle testified to the use of articles like plaintiff's exhibit 1 in Detroit, in a region in upper Michigan, and in Baltimore, Md. Witness Mitchell's half-dozen observances of similar items were confined to Portsmouth, R. I., and West Yarmouth, Mass. In those few places they had seen small sea grass mats like plaintiff's exhibit 1 used only outside the doors of houses for wiping the shoes or feet, and had not seen them used in any other way. In view of the uncontradicted testimony of the defendant's witnesses that such articles are purchased in carload quantities with a large market for them all along the eastern seaboard of the United States, particularly in Baltimore and the South, proof of chief use in those few sections of the country, on a limited number of occasions, falls far short of establishing that such merchandise was not chiefly used throughout the United States as floor coverings.

Neither do we think that the sample of the instant merchandise *per se* expresses the purpose for which it was intended, nor supplies the proof which we have here found lacking.

The inadequacy of proof in this respect renders it unnecessary to determine in this proceeding the substantive question of whether a door mat, chiefly used outside of houses as a means of removing dust, dirt, and grime from the shoes, or drying the feet, falls within the common meaning of the term "floor coverings" as that term is employed in the Tariff Act of 1930.

For the foregoing reasons, the claim of the plaintiff is overruled. Judgment will be entered accordingly.