WAH SHANG COMPANY *v.* UNITED STATES (No. 4886) [1]

156

United States Court of Customs and Patent Appeals, May 7, 1957

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellant.
*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Samuel D. Spector*, trial attorney, of counsel), for the United States.

[Oral argument April 4, 1957, by Mr. Tuttle and Mr. FitzGibbon]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, Abstract 59729, overruling the importer's protest and sustaining the action of the collector in imposing a revenue tax of $9 per gallon on the merchandise here involved under the provisions of section 2800 (a) of the Internal Revenue Code.

The merchandise was invoiced as "Fu Kwat" and "Sum Yung." It was classified by the collector under paragraph 24 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by T. D. 51909, as medicinal preparations containing more than 20 per centum but not more than 50 per centum of alcohol, and assessed with duty at the rate of 12½ per centum ad valorem and 40 cents per pound. That classification and rate of duty are not questioned here by either party, and the sole issue to be determined is whether the internal revenue tax above referred to was properly imposed.

The pertinent provisions of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802 and T. D. 51909, under which the merchandise was classified, are:

24. Medicinal compounds, preparations, mixtures, and salts:

\*      \*      \*      \*      \*      \*      \*

Containing more than 20 per centum and not more than 50 per centum of alcohol, 40¢ per lb. and 12½% ad val.

The pertinent portions of sections 2800 (a), 2809 (b), and 3030 (a).(1).(A) of the Internal Revenue Code of 1939 (1946 ed.), as amended read as follows:

Sec. 2800(a)(1). There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $9 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond.

(2) All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits.

Sec. 2809 (b). Distilled spirits, spirits, alcohol, and alcoholic-spirits, within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance.

Sec. 3030 (a) (1) (A). Upon all still wines, including vermouth, and all artificial or imitation wines or compounds * * * imported into the United States * * *.

\* \* \* \* \* \* \*

All such wines containing more than 24 per centum of absolute alcohol by volume shall be classed as distilled spirits and shall pay tax accordingly.

The pertinent provisions of the regulations promulgated by the Internal Revenue Bureau, known as Regulations 21, are as follows:

191.3. Definitions.—As used in the regulations in this part, the following words and phrases shall have the meanings as defined in this section. * * *

(d) "Distilled spirits" shall mean (1) ethyl alcohol, hydrated oxide of ethyl, and spirits of wine, from whatever source derived or by whatever process produced, and (2) any alcoholic distillate fit for beverage purposes, such as whiskey, brandy, gin, rum, liqueurs, cordials, and bitters, and all compounds, by whatever name called, containing distilled spirits and fit for beverage purposes, but shall not include wine, as defined in paragraph (k), containing 24 per cent or less alcohol by volume.

191.9. Rate of tax on other compounds and preparations.—Compounds and preparations, other than those specified in section 191.8, containing distilled spirits, which are fit for beverage purposes, in customs bonded warehouse or imported into the United States are subject to internal revenue tax at the rate of $9 per proof gallon or wine gallon when below proof * * *.

The importer produced a single witness, Jay Joe Luen, who testified that he had worked as a bar tender at several Chinese establishments, but had never known Fu Kwat or Sum Yung to be sold as a beverage at such places and had never seen them served as beverages at Chinese banquets or in homes, but had seen them in "Grocery store, or drug store, where they carry liquors." He further testified that Fu Kwat and Sum Yung had a common reputation among the Chinese for their medicinal qualities and that they were traditional Chinese tonics but "not for every day drinking, so I wouldn't serve it for everybody."

The Government offered no evidence but did request, without objection on the part of the importer, that the court order an analysis

of the merchandise to be made by the Alcohol Tax Chemist's Laboratory. This was done and the resultant report, although never formally offered in evidence, is in the record and was referred to by the lower court in its decision. The report indicates that the merchandise is fit for beverage purposes and that no known medicinal substances could be detected in it.

The Customs Court found that there was no evidence controverting the fact that the merchandise contains distilled spirits, or showing that it was unfit for beverage use, and that accordingly the court would not be justified in voiding the internal revenue tax imposed on it.

Since section 2800 (a) of the Internal Revenue Code of 1939 relates to products of distillation, the collector, in assessing a tax under that section, must have found the merchandise to be a product of distillation, and no evidence has been offered to the contrary. In fact, there is no evidence of record as to how the merchandise was produced. It was labeled as containing 48% alcohol and the accuracy of such labeling is not disputed here. For the purposes of this case, therefore, it must be accepted that the merchandise is a product of distillation which contains 48% alcohol and thus falls literally within the broad language of section 2800 (a).

Moreover, and as stated by appellant, the collector, in order to comply with the internal revenue regulations above quoted, and in order to impose the tax as he did, was obliged to find that the instant merchandise was "fit for beverage purposes." Therefore, it must be presumed that such a finding was made; and the burden of showing it to be incorrect rests upon the importer.

Appellant in its effort to meet that burden argues that the collector's classification of the merchandise as medicinal preparations must be presumed to be correct and that such classification is inconsistent with the imposition of a tax on the basis that the merchandise is fit for beverage purposes, citing *Wing Yee Chong & Co.* v. *United States*, 11 Ct. Cust. Appls. 329, T. D. 39142; *Shun Yuen Hing & Co.* v. *United States*, 11 Ct. Cust. Appls. 331, T. D. 39143; and *Brown & Co.* v. *United States*, 11 Ct. Cust. Appls. 402, T. D. 39320.

The first two cases thus cited involved substantially identical facts. In each case the collector had classified certain spirits as medicinal preparations and had also imposed a tax on them under section 600 of the revenue act of 1918, which section provided for a tax on "all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States." The court in those cases found that the merchandise was properly classified as medicinal preparations and therefore could not be taxed as distilled spirits. The two terms were evidently regarded there as mutually exclusive. In the instant case, however, the statute under which the tax was levied recites broadly all products of distillation which

contain distilled spirits or alcohol, and hence is not limited to distilled spirits *per se*.

The *Brown & Co.* case was similar to the two just considered and involved merchandise which had been classified as medicinal compounds and subjected to an additional duty under section 300 of the war revenue act of 1917, which section, like section 600 of the revenue act of 1918, above referred to, related to "distilled spirits." In holding that the additional duties in the *Brown & Co.* case were improperly imposed the court said:

Paragraph 300 of the act of 1917 makes no provision for compounds or preparations composed in part of distilled spirits, but is directed solely at "distilled spirits." This provision would not reach the medicinal compounds or preparations classifiable under paragraph 16, unless it appeared that they were distilled spirits and nothing else, which is negatived by the record before us. See *Wing Yee Chong & Co.* v. *United States* (11 Ct. Cust. Appls. 329; T. D. 39142).

We are of the opinion, since the tax provision involved in the instant case is not limited to distilled spirits *per se*, that the three cases just discussed are not controlling here.

It is a matter of common knowledge that some liquors, such as whiskey, are used both for beverage and medicinal purposes. In the decision in the *Brown & Co.* case it was pointed out that "The Treasury Department itself has authorized the assessment of Chinese wines, formerly classified as spirituous beverages, not specially provided for under paragraph 240 of the tariff act, as medicinal preparations, alcoholic, under paragraph 16, investigation having shown that they are dealt in in the drug trade of China and the United States and that the Chinese have faith in them owing to the belief they contain a certain amount of medicinal value."

It is evident from the quoted statement of the court in the *Brown & Co.* case that the line between beverages and medicinal preparations is not always easy to draw, and that a liquid which some persons might regard as being primarily a medicinal preparation might be considered by others to be primarily a beverage. Accordingly, we are of the opinion that the fact that the instant merchandise was classified as a medicinal preparation does not, alone, establish that it is not also fit for use as a beverage.

It is true, as contended by appellant, that the term "fit for beverage use" is not satisfied by a mere possibility of such use, and requires a substantial actual use as a beverage. But the term does not in our opinion require that the chief use of the merchandise shall be as a beverage. It is entirely possible that a liquid chiefly used as a medicinal preparation may also be used as a beverage to an extent sufficient to justify a holding that it is fit for such use. The actions of the collector in classifying the instant merchandise as a medicinal compound, and taxing it as fit for beverage purposes, therefore, were not necessarily inconsistent.

The only other alleged evidence that the merchandise is not fit for beverage purposes is the testimony of appellant's witness Jay Joe Luen, above referred to. That testimony, so far as it relates to beverage use, is largely negative, consisting of statements that the witness had not known of such use taking place. It is not established, however, that his experience and opportunities for observation were such that there could have been no substantial use of the merchandise as a beverage without his being aware of it. It is to be noted that the trial judge, who heard the witness testify, stated that "his testimony was not impressive, although not contradicted by other witnesses." Moreover, as above noted, the witness testified that he had seen the instant merchandise for sale in "Grocery store, or drug store, where they carry liquors." It is much more likely that a liquor sold in a grocery store would be intended for use as a beverage rather than as a medicine.

The statement of the witness that Fu Kwat and Sum Yung are more expensive than other Chinese liquors is not significant as to whether they are used as beverages, since there is a wide range in the prices of liquors used for beverage purposes, and it is not justifiable to presume that a relatively high priced liquor is intended to be used as a medicine rather than a beverage.

Whether any particular medicinal preparation is used as a beverage to such an extent that it may properly be said to be fit for beverage use is a question which must be decided on the basis of the facts of the individual case involved. In the instant case, as above noted, the burden rests upon the appellant to show that the merchandise is not used as a beverage to the extent necessary to remove it from the taxable provisions of the Internal Revenue Code, and we agree with the Customs Court that the burden has not been met.

Appellant contends that the Customs Court gave improper weight to the report of the analysis of the merchandise, which was not introduced in evidence. Since we have nowise relied on that report in reaching our conclusion, it is unnecessary to pass upon the issue.

The judgment of the United States Customs Court is *affirmed.*

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.