delegated by Congress within the clearly expressed limitations of section 7.

We are of the opinion that the reasoning and rule of the bicycle case are applicable to the situation in this case and, accordingly, hold that, inasmuch as Presidential Proclamation No. 3211 provides for customs treatment of spring clothespins classifiable under paragraph 412, *supra*, other than that found and reported by the Tariff Commission to be necessary to prevent or remedy serious injury to the domestic industry involved, the said proclamation exceeds the authority delegated to the President by the Congress and is, therefore, void.

Because of such invalidity, the proclamation was incapable of suspending the earlier proclamations, and the rate of duty therein prescribed is the proper rate applicable to the spring clothespins at bar. Judgment will, therefore, issue sustaining the protest claim for duty at the rate of 10 cents per gross under paragraph 412, Tariff Act of 1930, as modified by proclamation Nos. 2867 and 2884.

(C.D. 2293)

Castelazo & Associates
Western Commerce Corp. } *v.* United States

United States Customs Court, Third Division

(Decided October 24, 1961)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff* and *Richard H. Welsh*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on merchandise imported from Japan and described as ceramic bees at 10 cents per dozen pieces and 40 per centum ad valorem under paragraph 211 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, effective September 10, 1955, T.D. 53877, as earthenware tableware articles, other than plates, cups, or saucers, valued over $1 but under $2 per dozen articles. It is claimed that the merchandise is properly dutiable at 10 cents per dozen pieces and 25 per centum ad valorem under said paragraph, as modified, *supra*, as articles which are not tableware, kitchenware, or table or kitchen utensils, valued under $3 per dozen articles. It is also claimed that, in determining the number of dozen pieces, the iron legs and the body of the ceramic bee should be counted as one piece.

The collector's report contains a statement that, at the time the protest was filed, the agent or attorney who made, signed, and filed the protest was not named in a power of attorney authorizing him to make, sign, and file it. At the trial, the importer appeared by counsel, and it was conceded by counsel for the Government that the action of the agent had been ratified.

The pertinent provisions of the tariff act, as modified, are as follows:

[211] Earthenware and crockery ware composed of a nonvitrified absorbent body, * * *:

 Tableware, kitchenware, and table and kitchen utensils:

 * * * * * * *

 articles which are not plates, cups, or saucers and which are valued over $1 but under $2 per dozen articles;

 all the foregoing_____ 10¢ per doz. pieces and 40% ad val.

 * * * * * * *

 Articles which are not tableware, kitchenware, or table or kitchen utensils, valued per dozen articles—

 Under $3_____ 10¢ per doz. pieces and 25% ad val.

At the trial, there was received in evidence a sample representative of the imported merchandise as plaintiffs' collective exhibit 1. It consists of a yellow ceramic article with black stripes, in the shape of a bee, having a body, a lid, and a wire arrangement with six legs. The body is about 5½ inches long and 2 inches high and is hollow. The lid is wing-shaped and covers an opening at the top of the body. The body fits into the wire arrangement at the neck of the bee. The ceramic portion is glazed both on the outside and the inside.

Hans Vom Dorp, manager of Western Commerce Corp., testified as follows: The business of Western Commerce Corp. is the packing and distribution of honey and the sale of allied items all over the United States. The witness has been manager of the company since 1939 and has been in the honey business since 1928. His present duties are to supervise the packing of honey, its distribution and sale, and all other factors connected with it, including the development of new products. The firm sells to department stores, fancy food shops, roadside stands, and other outlets of that nature. The new products developed include whisky bottles filled with honey, the ceramic beehive, oranges, orange crocks, and apple crocks, all filled with honey. The purpose of these various commodities is to stimulate a demand for honey and to increase the firm's margin of profit. The witness has been familiar with the ceramic bee for 4 or 5 years. It was originally made in Salt Lake City and was known as the Mormon Bee. The firm made arrangements with the original maker to take it over on a royalty basis and, later, purchased all rights connected with it. It has the right to distribute it in all states, except Utah.

After importation, a polyethylene bag, containing 5 ounces of honey, is placed in the ceramic bee to dress up the item and identify the container with the content. The bee with the honey inside is then placed in a cellophane container on the cover of which is printed a story about bees and the gathering of honey. The purpose of this is to make a gift item out of it. It is sold to gift shops, fancy food shops, department stores, and roadside stands.

The witness had seen the ceramic bee used on knickknack shelves, on mantlepieces, and window sills in the homes of friends in southern California. He had never seen it used on a breakfast, luncheon, or dinner table for the dispensing of honey during the service of a meal. He did not think it was practicable for that purpose, for the following reasons:

In the first place, it only contains five ounces, which means that it is adequate for a service for two, and it would have to be cleaned and refilled every day. In the second place, the head is open, and the honey would flow into the head, and the opening is too small to insert a spoon, so a great deal of honey would be lost.

He admitted, however, that the bee could be tipped in order to get the honey out of the head.

The witness said that the wire legs are attached to the body of the bee by pressing the body down into the wire and that the article would be of no use without them.

The witness stated that his firm sells drip-cut servers, which are articles which dispense honey and which cut off the flow at a given point. They contain 1 to 3 pounds of honey. They have round openings the same as collective exhibit 1 but they have a spout to dispense the honey.

Alphonse Erhart, called as a witness for the plaintiffs, testified that he has been with Western Commerce Corp. for about 7 years and that he helps to develop and sell new items in the fancy food field and as gift items. He has been a salesman in the gift-item field for about 37 years. He sells articles all over the United States, except South Dakota, and travels extensively throughout the United States and Canada. During his travels, he has become familiar with the purposes for which such articles are designed and the uses made of them. He has been familiar with the merchandise involved herein for about 4 or 5 years. He first saw such an item in the gift department of a store in Salt Lake City and found that it was made by a man named Hatch, who had a small pottery business. Since the latter could not make a sufficient quantity for Western Commerce Corp., they made an arrangement with him to take over the rights to it.

The witness stated that the polyethylene bag, containing honey, was placed in the bee in order to sell it in fancy food stores or candy departments in department stores, where they will sell 15 to 20 times as many as in the gift department. When it is sold in gift departments, it is sold without honey in it. He had never seen it sold in the chinaware or tableware department.

He had seen about 40 or 50 of them used in homes of friends, mainly in Los Angeles, and had never seen it used anywhere except as an ornament. He added that he had friends in Chicago, that he had given away a hundred of the bees, and that every one was used for the purpose of ornament. He had not actually seen how the whole hundred was used, but stated that he had never seen any used on the breakfast, luncheon, or dinner table during the service of a meal. In the course of a year, a couple of hundred-thousand are sold.

The first question to be determined is whether this merchandise is tableware or not. The meaning of the term "tableware" for tariff purposes was defined by our court of appeals in *United States* v. *Butler Bros.*, 33 C.C.P.A. (Customs) 22, C.A.D. 310, as follows (p. 28) :

We think it is evident from the dictionary definitions of the term "tableware" that in using that term in paragraph 212, *supra,* the Congress intended to pro-

vide for only such articles as are *chiefly used upon a table for the service of meals,* and that it was not intended to cover novelty articles, such as the involved bonbon and candy dishes, which are not chiefly used in the service of meals but, according to the testimony of record, are used on bridge tables and occasional tables for serving candy, nuts, etc., after a meal. [Italics supplied.]

Since the collector has classified the instant merchandise as tableware, it is presumed that he found every fact to exist that was necessary to sustain such classification. *E. I. du Pont de Nemours & Co.* v. *United States,* 27 C.C.P.A. (Customs) 146, C.A.D. 75; *United States* v. *Zoltan Erdosi,* 40 C.C.P.A. (Customs) 137, C.A.D. 509. Thus, it is presumed that the collector found that these ceramic bees were chiefly used on the table for the service of meals, and the burden rests upon the plaintiffs to establish that they were not so used. *Wah Shang Company* v. *United States,* 44 C.C.P.A. 155, 158, C.A.D. 654.

Chief use is a question of actual fact which must be established on the basis of positive testimony representative of an adequate geographical cross-section of the country. *L. Tobert Co., Inc., American Shipping Co.* v. *United States,* 41 C.C.P.A. (Customs) 161, 164, C.A.D. 544. While the testimony of a single competent witness may suffice, such witness must be sufficiently qualified and the testimony must be of a convincing character and not negatived by the samples themselves. *United States* v. *S. S. Perry,* 25 C.C.P.A. (Customs) 282, T.D. 49395; *United States* v. *Gardel Industries,* 33 C.C.P.A. (Customs) 118, C.A.D. 325. Chief use in one state or one part of the country does not, without more, establish chief use throughout the United States. *Pacific Guano & Fertilizer Co. et al.* v. *United States,* 15 Ct. Cust. Appls. 218, T.D. 42240; *United States* v. *Spreckles Creameries, Inc.,* 17 C.C.P.A. (Customs) 400, T.D. 43835.

In the instant case, it appears that the merchandise is imported empty; that, thereafter, a polyethylene bag, containing 5 ounces of honey, is placed therein, and it is sold to gift shops, fancy food shops, department stores, and roadside stands. The only evidence as to use by the ultimate consumer is that the witness Vom Dorp had seen such items in the homes of friends in southern California on knickknack shelves, mantlepieces, and window sills as ornaments, and the witness Erhart had seen about 40 or 50 of them in Los Angeles and, possibly, Chicago, used as ornaments. Although about 200,000 are sold a year, the evidence presented shows only the use of some 50 to 100 of them in southern California and, possibly, Chicago. Such evidence is insufficient to establish that the chief use of this merchandise *in the United States* is not as tableware during the service of a meal. *S. S. Kresge Company* v. *United States,* 28 Cust. Ct. 373, Abstract 56297, appeal dismissed 40 C.C.P.A. 209; *California Wool Growers Assn. and Frank P. Dow Co., Inc.* v. *United States,* 34 Cust. Ct. 295, Abstract 58797.

In determining chief use, it is proper to consider not only the testimony, but the characteristics of the merchandise. *United States* v. *Colibri Lighters* (*U.S.A.*), *Inc.*, 47 C.C.P.A. (Customs) 106, C.A.D. 739. The merchandise here is a hollow ceramic article; it has a finished interior; it has a cover and a fairly large opening. It was obviously designed to contain something. There would be no reason for it to have a removable lid, were it intended only for use as an ornament. It was sold by the importer, not only with a bag of honey on the inside, but in a cellophane container having a printed legend referring to bees and honey. The importer's chief business was the packing and distribution of honey. There is evidence that the firm created fancy items in order to stimulate a demand for honey. Honey is an item which is ordinarily served at meals. An examination of the ceramic bee indicates that honey could easily be spooned into and out of the article. It would be appropriate to use on a kitchen or breakfast table or at other informal meals where honey might be served.

In *Dritz Traum Co., Inc.* v. *United States*, 71 Treas. Dec. 676, T.D. 48935, it was held that chinaware dishes used for serving tid-bits or hors d'oeuvres were properly classified as tableware. The court said (p. 677):

* * * Admittedly the chinaware in question here is used as containers of food of some sort. There is nothing to prevent the articles from being used upon the table. In fact they are suitable for such use as is plainly evident from an inspection of the exhibits in evidence. There is no evidence to show that the articles are only suitable for containers of a commodity that is never used at meal times. Very often hors d'ouvres [*sic*] are served in some sort of a dish at meal times. So are nuts, and other articles for which the dishes in question are suitable. The testimony of the plaintiff is not sufficiently convincing that the chinaware in question may not be put upon the table for the service at meals of any of the commodities for which they were said to be suitable as containers, nor do we think it is sufficient to overcome the correctness of the collector's classification of the articles as "tableware."

In *East-West Import Co. et al.* v. *United States*, 35 Cust. Ct. 31, C.D. 1716, the merchandise included dishes in the shape of a leafed stalk, a pea pod, a carrot, and a radish. The witness testified that he had never seen them used on the table in the service of a meal, although he admitted that he had seen them in bars to hold peanuts or at tea to hold small meats or small stuff. The court held that that evidence was insufficient to overcome the presumption of correctness attaching to the collector's classification of the items as tableware, stating (pp. 35–36):

An examination of the sample discloses that it is irregularly shaped and deeper than the ordinary pin tray. It has no cigarette rest and is not particularly suitable for use as an ashtray. It was evidently intended to hold foods, and its shape suggests its use for the service of celery. The other similar

articles illustrated in plaintiffs' exhibit 3 suggest a usage for serving radishes, pickles, olives, carrot sticks, or relish. Such items are served at a meal.

\* \* \* \* \* \* \*

In the instant case, the samples are witnesses to the fact that they are ordinary tableware, plaintiffs' exhibit 1 being the size and shape of fruit plates, and plaintiffs' exhibit 2 being suitable for use in serving olives, pickles, celery, radishes, carrot sticks, or relish.

Here, the merchandise is not ordinary tableware, but is a novelty item which was designed to contain something, was sold containing honey, and was suitable for use in the service of honey at meals. The evidence that a few such items (in comparison with the number sold) were seen used as ornaments in southern California, and possibly Chicago, is not sufficient to overcome the presumption of correctness attaching to the collector's classification.

The next question concerns the number of pieces to be counted in order to ascertain the specific duty of 10 cents per dozen pieces. This provision in paragraph 211 of the Tariff Act of 1930 was construed in *United States* v. *S. H. Kress & Co. et al.*, 23 C.C.P.A. (Customs) 90, T.D. 47764, to apply to each individual piece of the articles covered thereby. The court said (pp. 93–94):

We are of the opinion that the collectors' count of each individual piece of the earthenware involved in the various entries was the proper application of the controverted provision. We base this conclusion chiefly upon the context of paragraph 211. It will be noticed that the paragraph calls for "all other articles \* \* \* 10 cents per dozen pieces." It seems obvious that "articles" and "pieces" are not used in a synonymous sense, since if it was the purpose of Congress to treat each article, each entirety, with its several pieces, as one piece, it would have been unnecessary to have used the term "pieces" at all. The paragraph could well have read "and all other articles \* \* \* 10 cents per dozen."

In *Swissedent International* and *Hoyt, Shepston & Sciaroni* v. *United States*, 40 Cust. Ct. 95, C.D. 1965, we held that, in using the term "separate pieces" in paragraph 212, as modified, the negotiators of the General Agreement on Tariffs and Trade intended to refer to each individual piece of china, porcelain, or other vitrified ware, whether or not imported in sets or on cards or plaques. In *United China & Glass Co.* v. *United States*, 40 Cust. Ct. 596, Abstract 62058, we held that articles composed of two pieces of decorated earthenware and one piece of wood, in chief value of decorated earthenware, were entireties classifiable under paragraph 211, as modified, as earthenware articles, not tableware. It was further held that the entireties were subject to duty at both the specific and ad valorem rates applicable to decorated earthenware and that each piece had to be counted in assessing the rate of 10 cents per dozen pieces, even though one piece was composed of wood rather than of earthenware.

In view of these cases, we hold that each separate piece composing the ceramic bee involved herein, the body, the cover, and the wire

arrangement, is subject to duty at the specific rate of 10 cents per dozen pieces. The cases cited by plaintiffs, *James Betesh Import Co.* v. *United States*, 40 Cust. Ct. 186, C.D. 1981, and *Ross Products, Inc.* v. *United States*, 43 Cust. Ct. 74, C.D. 2106, are not in point, since the merchandise in those cases was in chief value of metal and not of earthenware. There is no evidence in the instant case nor has any claim been made that the merchandise is not in chief value of earthenware. The invoice indicates, on the contrary, that it was in chief value of earthenware.

For the reasons stated, we hold that this merchandise was properly assessed with duty at 10 cents per dozen pieces, with the wire arrangement counted as a separate piece, and 40 per centum ad valorem under paragraph 211 of the Tariff Act of 1930, as modified, as earthenware tableware, not plates, cups, or saucers, valued over $1 but under $2 per dozen articles. The protest is overruled, and judgment will be rendered for the defendant.