(C.D. 2510)

Diamond Trading Co., Ltd.
American Customs Brokerage Co. } *v.* United States

## United States Customs Court, First Division

(Decided February 15, 1965)

*Glad & Tuttle* (*Edward N. Glad* and *George R. Tuttle* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before OLIVER, WILSON and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case, described on the invoice as "Beach Mats (Floor Covering Grass Mats)," was imported from Japan and entered at the port of Honolulu on August 10, 1961. It was assessed with duty at 12½ per centum ad valorem under paragraph 1537(a) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, as manufactures in chief value of grass. It is claimed to be dutiable at 1½ cents per square yard under the provision in paragraph 1021 of said tariff act, as modified, *supra*, for Japan straw matting and floor coverings made therefrom.

The pertinent provisions of the tariff act, as modified, are as follows:

| Tariff Act of 1930 paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1021 | Common China, Japan, and India straw matting, and floor coverings made therefrom. | 1½¢ per square yard. |
| * | * * * * * | * |
| 1537(a) | Manufactures of bone, chip, grass, sea grass, horn, straw, or weeds, or of which these substances or any of them, or a combination of these substances or any of them with quills, palm leaf, or whalebone, is the component material of chief value, not specially provided for: | |
| * | * * * * * | * |
|  | Other_____ | 12½% ad val. |

At the trial, plaintiffs called Shoichi Takata, president of Diamond Trading Co., Ltd., one of the plaintiffs herein. His duties included purchasing and selling for the firm, which imports and sells footwear and general merchandise. He produced samples of the imported merchandise, which were received in evidence as plaintiffs' exhibits 1

and 2. They consist of lightweight, flexible straw mats, each with tapes a few inches in length affixed to one end of the mat. One mat is bound all around with black tape and the other is not bound. The witness stated that the mats measured 34½ inches by 60 inches. It was stipulated that they were made of common Japan straw.

Mr. Takata testified that he had previously imported beach mats without a tie, but that his customers had to tie them with a string or rubber band and asked that a tie be attached to the mat in order to save their time. A sample of such merchandise was received in evidence as plaintiffs' illustrative exhibit 3. It is similar to plaintiffs' exhibit 2, except that it does not have a tape for tying. The witness stated that he was aware of the duty he had to pay on merchandise such as plaintiffs' illustrative exhibit 3 and that it was 1½ cents a square yard.

According to the witness, about 10 years ago, 3- by 4-yard mats were imported from Japan and, about 8 years ago, this mat, fit for school children, was imported. He had seen them used on the porch or the beach, in the park, or at picnics. He had seen them used in the house in the parlor, kitchen, and porch. They were used on the floor when Sukiyaki parties were held. They were used for the same purposes whether or not they had a tie. He did not know whether they were chiefly used on the beach. When asked whether they were more often used in the kitchen or parlor or on the beach and in the park, he said:

We sell beach mats about 70 per cent to Waikiki, 30 per cent to ordinary accounts, but on checking with the Hawaiian Business Bureau, of about 200,000 people coming here, less than 50 per cent come from the shore states, California and Oregon. In other words, over 50 per cent come from inland states. They can't use the mat on the beach because they have no beach.

The witness stated that, at Waikiki, these articles are used on the beach or on yachts. The purpose of the tie is to make the articles easier to carry, so that they can be moved or stored. He had seen people carrying them rolled up under their arms back and forth to the beach. They are known as "Goja" and are called beach mats.

Plaintiffs claim that these mats, made from common Japan straw, are properly dutiable under paragraph 1021, *supra*, which provides for common Japan straw matting, and floor coverings made therefrom.

Present and past tariff acts have distinguished between the terms "mats" and "matting," and it has long been held that these terms are not synonymous. *Darragh & Smail* v. *United States*, 1 Treas. Dec. 639, T.D. 20923; *A. A. Vantine & Co.* v. *United States*, 2 Treas. Dec. 98, T.D. 21407; *Gray Brothers* v. *United States*, 17 Treas. Dec. 184, T.D. 29592. In the *Vantine* case, the articles were classified by the

collector as mats of vegetable substance and were claimed to be dutiable as matting. They measured 3½ by 7 feet, 6 by 6 feet, and 8 by 10 feet. The court held that they were entirely dissimilar and unlike matting, which was always made in long rolls and afterwards cut up to suit the purchaser, and that to designate them by any other name than mats would destroy their identity, mislead the public, and lead to evasions of the law. The court stated:

> Matting is understood in the trade and by people generally to be a fabric woven out of grass or vegetable fiber, made in long continuous rolls and used as a carpeting to cover floors. It is sold either by the roll or yard, and is cut up in proper lengths to fit the room or hall where it is to be laid. These rolls differ in length according to the country of production. Thus India matting rolls are 60 yards long and China matting rolls are 40 yards long. * * *

> Mats are distinguished from matting as understood by both the trade and public as completed articles, woven out of the same material, made in certain styles and sizes suitable to be used before doors, on porches, in vestibules, and in halls. They are never cut up, but are used in the shape woven, having a pattern and border, its edges on all four sides being finished in the weaving. * * *

In *Gimbel Bros., Inc., N.Y.* v. *United States*, 19 Cust. Ct. 134, Abstract 51906, the merchandise was classified as cocoa fiber matting and was claimed to be dutiable as all other floor coverings. The evidence established that it was made in continuous rolls of 50 yards, but that the weft was omitted at particular intervals so as to form a line of demarcation where the articles were to be cut. The court held that the merchandise was classifiable as floor coverings.

In the instant case, the merchandise consists of separate articles and not a long continuous roll. Therefore, it is not matting. Plaintiffs' claim as stated at the trial and in the brief is that the articles are, in fact, floor coverings.

The provision for floor coverings has been held to be a designation by use and to be more specific than a general provision covering manufactures of certain materials. *M. A. Katz & Co.* v. *United States*, 4 Cust. Ct. 327, C.D. 354. The collector, however, has classified the merchandise as manufactures of grass under paragraph 1537(a), *supra*. Implicit in his classification is a finding that the merchandise was not chiefly used as floor coverings. Since it is presumed that his classification is correct and that he found every fact to exist which was necessary to that classification, the burden rests on plaintiffs to establish that merchandise of this class or type was chiefly used as floor coverings at the time of importation. *Dorward & Sons Co. et al.* v. *United States*, 40 CCPA 159, 162, C.A.D. 512; *Davies, Turner & Co.* v. *United States*, 40 CCPA 193, 194, C.A.D. 517; *United States* v. *G. Klein & Son*, 42 CCPA 73, 76, C.A.D. 574; *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, 149, C.A.D. 75;

*United States* v. *The Baltimore & Ohio R.R. Co.*, 47 CCPA 1, C.A.D. 719.

When the classification of merchandise is governed by use, the term "use" imports "chief use." *United States* v. *The Baltimore & Ohio R.R. Co.*, *supra; Bob Stone Cordage Co. et al.* v. *United States*, 51 CCPA 61, C.A.D. 838. Chief use is a question of actual fact which must be established on the basis of positive testimony representative of an adequate geographical cross-section of the country. *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, 164, C.A.D. 544. While the testimony of a single competent witness may suffice, he must be qualified, and his testimony must be convincing and not negatived by the samples themselves. *United States* v. *S. S. Perry*, 25 CCPA 282, T.D. 49395; *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325. Evidence of chief use in one state or one part of the country, standing alone, will not establish chief use throughout the United States. *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T.D. 42240; *United States* v. *Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835.

In *M. A. Katz & Co.* v. *United States*, *supra*, mats and rugs in chief value of sea grass were classified by the collector as floor coverings under paragraph 1021 and this classification was sustained, since no evidence was introduced to show that the merchandise was not, in fact, chiefly used as floor coverings. The court cited a number of decisions where mats had been held classifiable otherwise than as floor coverings, where there was no testimony as to chief use as a floor covering or where the uses were for decorating store windows, around golf courses, or in connection with burials in cemeteries. *National Wreath & Spray Co.* v. *United States*, 64 Treas. Dec. 1118, Abstract 26219; *Chas. H. Demarest, Inc.* v. *United States*, 67 Treas. Dec. 1173, Abstract 30412.

In *United States* v. *Stern Co. et al.*, 15 Ct. Cust. Appls. 274, T.D. 42467, the merchandise consisted of imitation grass blades made from raffia sewn to a background or foundation of burlap. Answering a question as to whether the articles were used for floor covering, the acting appraiser testified:

As far as being used for floor covering as a matter of utility, no. As far as being used for floor covering in covering a stage set or in putting a covering on a floor in a show window, yes.

The court held, among other things, that the mats were not fitted for or used as floor coverings and were not classifiable as such.

In *S. S. Kresge Company* v. *United States*, 28 Cust. Ct. 373, Abstract 56297, appeal dismissed, 40 CCPA 209, mats were classified by the collector as floor coverings and were claimed to be dutiable as manufactures of sea grass. One of plaintiff's witnesses testified to the use

of such articles in Detroit, a region in upper Michigan, and in Baltimore. The other's observances had been confined to Portsmouth, R.I., and West Yarmouth, Mass. Both had seen these mats used only outside the doors of houses for wiping shoes or sand from the feet. One of defendant's witnesses had purchased such articles by the carload and testified that it was known as a fancy twisted oval sea grass mat and that it came in various sizes. He had seen such items used in homes, under sinks, in cellars, as scatter rugs, and also outside the door. The other witness purchased such articles in China and had sold them to leading department stores and other firms handling floor coverings. He testified that they were bought and sold as floor coverings and that he had seen them used in Canada, Vermont, New Hampshire, Pennsylvania, and Long Island as floor coverings inside rooms, at doorways, in kitchens, and as throw rugs between adjoining living and dining rooms. The court held, in view of the testimony of defendant's witnesses, that such articles are purchased in carload quantities for a large market all along the eastern seaboard, that plaintiff's proof of use in a few sections of the country on a limited number of occasions fell short of establishing that such merchandise was not chiefly used throughout the United States as floor coverings.

In *Gimbel Bros., Inc.* v. *United States*, 22 CCPA 146, T.D. 47111, it was held that sponge rubber bath mats were not classifiable as floor coverings. The court stated (p. 148) :

> It seems obvious that the use of the article here involved differs from the customary use of such articles as the paragraph specifically names, such as floor coverings, made from straw matting, and carpets, carpetings, etc., made wholly of cotton, flax, hemp, or jute, or a mixture thereof. The sample (Exhibit 1) before us is $21\frac{1}{2}$ inches long by $13\frac{1}{2}$ inches wide and about one-fourth inch in thickness. It appears to be wholly of rubber treated in a manner which gives its upper surface a spongy appearance. The stipulation states that the use for which it is designed is on the floors of bathrooms. It is a bathing accessory and, so far as shown, has no other use.

The merchandise in *United States* v. *Inter-Maritime Forwarding Co., Inc.*, 41 CCPA 107, C.A.D. 537, consisted of rubber mats, 30 inches long by 20 inches wide. They were of a green color and had large white letters inlaid therein, stating "WE GIVE S. & H. GREEN STAMPS." They were placed on the floor in stores for advertising purposes and as a floor covering over spots where there was considerable traffic. The court held that they were not classifiable under paragraph 1021 as floor coverings, stating (p. 111) :

> Thus it is clearly evident that the principal use of the mats is not as floor coverings, as we construe the meaning of those words as used in paragraph 1021, *supra*. The obvious purpose for which they are designed and the use to which they are put is as an advertising medium rather than as a floor covering. Their use on the floor is wholly incidental to the primary use to which they are put.

We are supported in that conclusion by the testimony of the witness that the words "WE GIVE S. & H. GREEN STAMPS" are so inlaid or vulcanized in the mat as to remain even long after some of the physical features of the mat, upon which appellant relies in support of its contention that the mats are floor coverings, have disappeared.

The evidence in the instant case falls far short of establishing that the chief use of this merchandise is as floor coverings. The witness mentioned a variety of uses for these mats—on the beach, in the park, at picnics, and on the porches or in rooms of houses. He called the articles beach mats and had sold 70 per centum of them to Waikiki and had seen people carrying them back and forth to the beach. His deduction that because 50 per centum of the visitors to Hawaii came from inland states, the articles could not have been used on beaches is untenable. Beaches may be found at lakes and other bodies of water, as well as the seashore, and people who travel to Hawaii may use the mats there or they may well travel to other places having beaches, or they may sun-bathe in their own backyards. In fact, no evidence has been presented as to the actual use of these mats throughout the United States, as floor coverings or otherwise. An examination of the samples makes it seem implausible that they should ever be used as floor coverings, as they are thin and flimsy and do not appear to be suitable for use on floors. They would be dangerous as they would be apt to slide. They would not wear well. On the other hand, they are easy to carry because they are light in weight and can be rolled and tied with the tape.

Plaintiffs appear to be basing their case in part, at least, on the theory that the collector classified plaintiff's exhibit 3 (the mat without the tie) as a floor covering and that, therefore, the present merchandise should be so classified. The only evidence on this point is found in the following excerpt from Mr. Takata's testimony:

Q. Mr. Takata, when you imported merchandise such as Illustrative Exhibit 3, were you aware of the duty you had to pay on it?—A. 1½ cents a square yard.

Even if this be accepted as sufficient to establish that the collector had classified that merchandise as floor coverings, it does not prove that that classification was right nor that the classification of the present importation is incorrect. *Weather-Rite Sportswear Co., Inc.* v. *United States*, 49 Cust. Ct. 180, Abstract 66910.

Since plaintiffs have failed to establish that the chief use of the merchandise involved herein throughout the United States at the time of importation was as floor coverings, the protest must be overruled and the action of the collector sustained. Judgment will be rendered accordingly.