(C. D. 1716)

EAST-WEST IMPORT CO.
JAMES G. WILEY } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 7, 1955)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*William J. Vitale* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on certain chinaware, imported from Japan on or about November 14, 1951, at 70 per centum ad valorem and 10 cents per dozen pieces under paragraph 212 of the Tariff Act of 1930 as decorated china tableware. It is claimed that the merchandise is properly dutiable at 45 per centum ad valorem under said paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as decorated chinaware, other than tableware.

At the trial, two samples and a photograph representing the merchandise were received in evidence as plaintiffs' exhibits 1 and 2, and illustrative exhibit 3, respectively. Plaintiffs' exhibit 1 is a plate, approximately 6 inches in diameter, in the center of which is depicted in various colors an assortment of fruits and leaves. Plaintiffs' exhibit 2 is a dish, about 7 inches long, 3 inches wide, and ⅞ths of an inch deep, roughly in the shape of a leafed stalk, decorated with violets. Plaintiffs' illustrative exhibit 3 is a photograph of three plates, similar to plaintiffs' exhibit 1, but with different fruit decorations, and of four dishes similar to plaintiffs' exhibit 2, but in different shapes, such as pea pod, carrot, and radish.

Plaintiffs called William Y. Shimizu, owner of East-West Import Co., the importer herein. He testified that the company had been organized in 1947 but that he had been importing chinaware and household ware since 1912, except during the war period, 1940 to 1946. He had imported merchandise similar to plaintiffs' exhibits 1, 2, and 3 for the last 40 years and had sold them to gift stores and department stores all over the United States. He had learned of the uses of such articles by selling them to stores, and he had seen many private families use them. He stated that plaintiffs' exhibit 1 is mostly used for decoration as a wall plaque; that it is hung up on the wall with a ribbon or by a nail. Plaintiffs' exhibit 2 is used as a pin tray, or an ash tray, or to hold peanuts, and the different shaped articles shown in plaintiffs' illustrative exhibit 3 are used for the same purposes. The witness added that he had seen such articles used in private families and in bars.

On cross-examination, he testified:

X Q. Mr. Shimizu, when you sell Plaintiff's Exhibit #1, which I have in my hand, how do you describe it when you sell it?—A. Wall plaque.

X Q. Have you ever seen a highly decorative plate used as a wall ornament?— A. Yes, millions of them.

X Q. Have you ever seen Plaintiff's Exhibit #1, articles similar to that, used on the table during the service of a meal?—A. I don't think so; of course you can use it but I have never seen it.

X Q. Plaintiff's Exhibit #1 could be used at the table during the service of the meal?—A. I don't think so, how? Why?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A. When you say meal—depends on snack or lunch.

X Q. I mean a dinner meal or luncheon meal.—A. Never.

The witness stated that plaintiffs' exhibit 1 was not suitable for use as tableware, because it was not big enough for dinner and because the decorations were too loud; "it kills the food."

The witness testified that he did not call plaintiffs' exhibit 2 tableware and that such articles are not used to serve celery, carrots, or olives, because they are not big enough; they would hold no more than half a dozen olives. He also stated:

X Q. Have you ever seen it used during the service of a meal on the table either during lunch or dinner?—A. That's a very hard answer; I saw it in bars, put in peanuts, so if you call that a dinner or a meal, yes.

X Q. Have you ever seen it in any family home during the service of a meal, either lunch or dinner?—A. No, but I just wanted to explain that, some place they use tea, they have small meats or small stuff, you know, but if you call that a meal, yes, but not a meal on the table.

The only question before us is whether the imported merchandise is tableware, within the meaning of paragraph 212 of the Tariff Act of 1930. The leading case on this subject is *United States* v. *Butler Bros.*, 33 C. C. P. A. (Customs) 22, C. A. D. 310, which involved china dishes in the shape of saucers with bamboo handles. Nine witnesses testified for the plaintiff to the effect that such dishes were never used on the table in the service of meals, were never bought or sold as tableware, and were of the character of articles used on occasional tables for serving candy or nuts and passed around during the evening among guests. One of the Government's witnesses admitted that he had never seen the articles used in connection with the service of meals, and the other, an examiner of merchandise, testified that it had been the practice to classify such articles as not included under tableware, although it was his belief that the article was tableware. The court held that the articles were not tableware, stating (p. 28):

We think it is evident from the dictionary definitions of the term "tableware" that in using that term in paragraph 212, *supra*, the Congress intended to provide for only such articles as are chiefly used upon a table for the service of meals, and that it was not intended to cover novelty articles, such as the involved bonbon and candy dishes, which are not chiefly used in the service of meals but, according to the testimony of record, are used on bridge tables and occasional tables for serving candy, nuts, etc., after a meal.

In the instant case, the collector has classified the merchandise as tableware. It is presumed, therefore, that he found every fact to exist that was necessary to sustain that classification. *United States* v. *Zoltan Erdosi*, 40 C. C. P. A. (Customs) 137, C. A. D. 509. The importer has the twofold burden of proving the collector's classification erroneous and of establishing that its claimed classification is correct. *Dorward & Sons Co. Pacific Vegetable Oil Corp.* v. *United States*, 40 C. C. P. A. (Customs) 159, C. A. D. 512. Specifically, it must show that the articles involved herein are not chiefly used in the service of meals.

Chief use is a question of actual fact to be established by positive testimony representative of an adequate geographical area. *Advance Solvents & Chemical Corp.* v. *United States*, 34 C. C. P. A. (Customs) 148, C. A. D. 358; *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325. While the testimony of a single competent witness may suffice, such witness must be sufficiently qualified and the testimony must be of a convincing character and not negatived by the samples themselves. *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395; *United States* v. *Gardel Industries, supra*; *W. X. Huber Co.* v. *United States*, 19 Cust. Ct. 88, C. D. 1074.

The witness herein testified that for 40 years he had sold articles such as the instant merchandise all over the United States and that he had seen them used by many private families. However, he did not say when or how often or in what parts of the country he had seen them used. Since the classification of the merchandise depends upon its chief use, proof of that use is confined to the time at and prior to the enactment of the tariff act. *United States* v. *F. W. Myers & Co., Inc.*, 24 C. C. P. A. (Customs) 464, 469, T. D. 48913. Chief use in one state or one part of the country does not, without more, establish chief use throughout the United States. *Pacific Guano & Fertilizer Co.* v. *United States*, 15 Ct. Cust. Appls. 218, T. D. 42240; *United States* v. *Spreckels Creameries, Inc.*, 17 C. C. P. A. (Customs) 400, T. D. 43835.

The witness stated that the article represented by plaintiffs' exhibit 1 is sold and used as a wall plaque and that he had never seen it used at a dinner or a luncheon. He did not think it suitable for such use, because it was not big enough and the decorations were too loud.

The sample itself is a very potent witness. *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995. It is a plate which is too small for serving the main course of a dinner, but is of the size and type used when fruit is served as a dessert at luncheon or dinner or as a first course at breakfast. Its decorations suggest that it was designed for that purpose. There is no hook or ring at-

tached to the plate adapting it for use as a wall plaque, nor is there any evidence that it was sold with a stand for the purpose of setting it up as a decoration.

According to the witness, plaintiffs' exhibit 2 and like articles were used as pin trays, ashtrays, or to hold peanuts. He said he had seen them used in bars to hold peanuts and had seen them used in families at tea, where "they have small meats or small stuff." He did not think they were large enough for serving olives at a meal.

An examination of the sample discloses that it is irregularly shaped and deeper than the ordinary pin tray. It has no cigarette rest and is not particularly suitable for use as an ashtray. It was evidently intended to hold foods, and its shape suggests its use for the service of celery. The other similar articles illustrated in plaintiffs' exhibit 3 suggest a usage for serving radishes, pickles, olives, carrot sticks, or relish. Such items are served at a meal.

In *Dritz Traum Co., Inc.* v. *United States*, 71 Treas. Dec. 676, T. D. 48935, it was held that dishes used for serving tid-bits, nuts, or hors d'oeuvres were tableware. The court said (pp. 677–678):

\* \* \* Admittedly the chinaware in question here is used as containers of food of some sort. There is nothing to prevent the articles from being used upon the table. In fact they are suitable for such use as is plainly evident from an inspection of the exhibits in evidence. There is no evidence to show that the articles are only suitable for containers of a commodity that is never used at meal times. Very often hors d'ouvres [*sic*] are served in some sort of a dish at meal times. So are nuts, and other articles for which the dishes in question are suitable. The testimony of the plaintiff is not sufficiently convincing that the chinaware in question may not be put upon the table for the service at meals of any of the commodities for which they were said to be suitable as containers, nor do we think it is sufficient to overcome the correctness of the collector's classification of the articles as "tableware."

In the recent case of *The Baltimore and Ohio Railroad Company* v. *United States*, 33 Cust. Ct. 309, Abstract 58248, earthenware articles, invoiced as "Bon Bons," were classified by the collector as decorated earthenware, not tableware, and were claimed by the importer to be tableware. The witness testified that he had seen the articles used on a table as containers of olives or pickles in a southern state; that he had used them on his own table; and that he had seen them used for salads or fruits in Illinois and Indiana. He had also seen them used as candy dishes. The court held the evidence was insufficient to establish that the articles were chiefly used in the service of meals, stating:

\* \* \* The samples themselves are potent witnesses to the fact that they are not the same as ordinary tableware, but are of the shapes and sizes of bonbon or candy dishes.

In the instant case, the samples are witnesses to the fact that they are ordinary tableware, plaintiffs' exhibit 1 being the size and shape of fruit plates, and plaintiffs' exhibit 2 being suitable for use in serving olives, pickles, celery, radishes, carrot sticks, or relish.

In our view, the evidence presented is insufficient to overcome the presumption of correctness attaching to the collector's classification of the merchandise as decorated china tableware under paragraph 212 of the Tariff Act of 1930. The protest is overruled and judgment will be rendered for the defendant.