(C.D. 2339)

BRUCE DUNCAN CO., INC., A/C KASUGA SALES, LTD.
NATIONAL SILVER COMPANY } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 10, 1962)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., dissenting

JOHNSON, Judge: These are protests against the collector's assessment of duty on merchandise described as decorated porcelain snack sets at 60 per centum or 45 per centum ad valorem and 10 cents per dozen pieces under paragraph 212 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, effective September 10, 1955, T.D. 53877, as decorated china tableware, not con-

taining 25 per centum or more of calcined bone. It is claimed that the merchandise is not tableware and is properly subject to duty at only 45 per centum ad valorem under said paragraph 212, as modified.

The pertinent provisions of said tariff act, as modified, are as follows:

[212] China, porcelain, and other vitrified wares, * * * all the foregoing, whether plain white, painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for:

Tableware, kitchenware, and table and kitchen utensils, not containing 25 per centum or more of calcined bone:

*   *   *   *   *   *   *

Other than hotel or restaurant ware or utensils:
Plates, * * *
over 7⅞ but not over 9⅛ inches in diameter and valued over $1.80 but not over $5 per dozen, * * *
cups, valued over $1.35 but not over $4.45 per dozen;
saucers, valued over 90 cents but not over $1.90 per dozen; and
articles which are not plates, cups, or saucers and which are valued over $4.50 but not over $11.50 per dozen articles;

all the foregoing_____    10¢ per doz. separate pieces and 60% ad val.

Plates of the diameters specified heretofore in this item, cups, saucers, and articles other than plates, cups, and saucers; each of the foregoing which is valued at not more than the minimum value specified heretofore in this item in respect of the like article.    10¢ per doz. separate pieces and 45% ad val.

*   *   *   *   *   *   *

Articles which are not tableware, kitchenware, table or kitchen utensils, or chemical stoneware, and which do not contain 25 per centum or more of calcined bone.    45% ad val.

At the trial, John H. Klein, a salesman for Kasuga Sales, Ltd., testified that his firm is an importer of gift wares and china and dinnerware and that he serves as its western representative. He has been with the firm 2 years and has handled articles such as those involved herein since 1944. He stated that he was familiar with the merchandise, designated on the invoice (covered by entry No. 37367) as snack sets No. 44856, 44855, and 44858, and produced a representative sample, which was received in evidence as plaintiffs' collective exhibit 1. It consists of a decorated china plate and a cup. The plate is about 8 inches in diameter and is circular in shape with two indentations in the circumference, thus forming a lug for holding the

article. Toward the rim of the plate is a well in which to set the cup. The cup does not differ from the ordinary teacup.

Mr. Klein also produced a photograph illustrative of some of the other styles covered by the invoice, which was received in evidence as plaintiffs' exhibit 2. Some of the plates appear to be completely round, rather than having the indentations forming the lug. Otherwise, the articles differ from plaintiffs' collective exhibit 1 only in decoration.

Mr. Klein testified that he sold such articles in the western part of the United States and that he had seen them used in the West and in the East, on the Atlantic coast. He said he was familiar with the general line of china dinnerware and novelty articles sold by his firm. Moreover, he had helped select certain patterns and suggested changes in the designs of merchandise like plaintiffs' collective exhibit 1 at merchandising meetings with representatives of the manufacturers held in Los Angeles.

According to Mr. Klein, such merchandise is designed to serve as snack trays or lap trays. He pointed out that at one edge of the tray there is an indentation, called a well, which is to act as a firm basis for the foot of the cup, to keep it on the plate. In addition to holding the cup, the plate is used for the service of ice cream, a piece of cake, or a sandwich. The article is not designed to be used on the table in the service of a meal, but to be held in the hands when eating a snack. The witness testified that he had seen such articles used for that purpose since 1944. Mr. Klein stated that the shape of the plate makes it suitable for such use, since it has a grip with which to hold it, leaving one hand free to pick up whatever is on it. It differs from dinnerware, in that the latter is something to be used at a table in connection with a complete meal, whereas the present article is never used at a table. The witness pointed out that a cup, which is part of dinnerware, is used on a saucer, but the tray of a snack set is a combination of saucer and plate. He had never seen snack sets used at a buffet dinner.

Oscar Hart, assistant merchandise manager of National Silver Company, testified that his firm imports silver, curtainware, chinaware, and flatware, and that he has been in the business 16 years. In the course of his duties, he attends general merchandising meetings twice annually, at which the type of merchandise to import, and its design and styling, are decided upon. He was familiar with the article described on the invoice (covered by entry No. 21352) as article No. 6303, Plain Swirl Porcelain Snack Set, and produced a photograph thereof, which was received in evidence as plaintiffs' exhibit 3. The photograph depicts articles like plaintiffs' collective exhibit 1, except that the plates are round and are decorated with a swirl pattern.

The witness stated that his firm imports snack sets in various shapes—round, oblong, shell, and fan. An example of the latter was received in evidence as plaintiffs' collective illustrative exhibit 4. It is similar to plaintiffs' collective exhibit 1 in shape, but is more elaborately decorated.

Mr. Hart testified that, at the merchandising meetings in which he participated, the design and shape of snack sets had been discussed. According to the witness, the purpose of the plate is to hold food, such as ice cream, cakes, or little snack sandwiches. The plate could conceivably be used as a little salad plate, but not for serving steaks or chops. It differs from tableware articles in that the latter are generally round and do not have an indentation to hold a cup. The witness pointed out also that on the rim of the plate there is a lug to be held in the hand. In the opinion of the witness, this merchandise is designed for use away from the table, to be held on the lap, and is not suitable for use in the service of a meal. He said that if it were to be used to serve a course of a meal, it would be for dessert. It is not part of a dinnerware set.

The witness testified that he had seen such articles used in Los Angeles and on the East coast for serving snacks, or dessert at the end of a bridge game, or for coffee and cake, in living rooms and dens. He had never seen them used on the table in the service of breakfast, lunch, or dinner. He stated that such articles are not known in the trade as tableware, but are referred to and advertised as TV snack sets and are so sold by his company. They are not anything like a so-called "TV Dinner," which consists of a frozen dinner contained in an aluminum foil dish in which the food can be heated and served.

The issue in this case is whether the imported snack sets are tableware, within the meaning of paragraph 212 of the Tariff Act of 1930, as modified, *supra*. In discussing the meaning of this term, our court of appeals, in *United States* v. *Butler Bros.*, 33 C.C.P.A. (Customs) 22, C.A.D. 310, quoted the following definitions (pp. 27–28) :

*tableware, n.* Ware, or articles collectively for table use. (Webster's New International Dictionary.)

*tableware, n.* Ware for table use; dishes, knives, forks, spoons, etc., collectively. (Funk & Wagnalls New Standard Dictionary.)

*Tableware.* Ware for the service of the table; a collective term for the articles which are used at meals, as dishes, plates, knives, forks, etc. (Oxford, A New English Dictionary on Historical Principles, 1919, Vol. IX.)

*tableware, n.* Ware for use at table; the articles collectively which may be put upon the table for the service of meals. (Century Dictionary & Cyclopedia, 1911.)

It held (p. 28) :

We think it is evident from the dictionary definitions of the term "tableware" that in using that term in paragraph 212, *supra*, the Congress intended to pro-

vide for only such articles as are *chiefly used upon a table for the service of meals*, and that it was not intended to cover novelty articles, such as the involved bonbon and candy dishes, which are not chiefly used in the service of meals but, according to the testimony of record, are used on bridge tables and occasional tables for serving candy, nuts, etc., after a meal. [Italics supplied.]

Thus, the question before us is narrowed down to whether or not these snack sets are chiefly used upon a table for the service of meals.

In determining chief use, it is proper to consider not only the testimony offered, but the characteristics of the merchandise itself. *United States* v. *Colibri Lighters* (*U.S.A.*) *Inc.*, 47 C.C.P.A. (Customs) 106, C.A.D. 739. Such use may be shown either by the character of the article itself, provided it is evidence *per se* of its intended use, or it may be shown by proof that such article is intended and serviceable substantially for the purpose declared by the statute. *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T.D. 33873. The presumption of correctness attaching to the collector's classification may be overcome by the probative effect of the samples themselves. *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T.D. 41461; *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995.

Whether or not chief use has been properly established depends upon the issues and the evidence in each case. *United States* v. *F. W. Woolworth Co.*, 23 C.C.P.A. (Customs) 98, T.D. 47765. There, the court stated (p. 100) :

We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule.

The testimony in the instant case indicates that the merchandise was designed for use away from the table where the plate and cup must be held in the hand or on the lap. Both witnesses had seen the articles used for the service of coffee and cake, ice cream, or sandwiches, in living rooms and dens, away from the table, on the West and East coasts. However, such testimony alone does not establish chief use at the time of importation in an adequate geographical cross-section of the country. *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T.D. 42240; *United States* v. *Spreckels Creameries, Inc.*, 17 C.C.P.A. (Customs) 400, T.D. 43835; *California Wool Growers Assn. et al.* v. *United States*, 34 Cust. Ct. 295, Abstract 58797; *East-West Import Co. et al.* v. *United States*, 35 Cust. Ct. 31, C.D. 1716.

We turn then to the samples themselves. It is clear from an examination of them that they are designed for the service of food and drink.

The cup is an ordinary teacup, but the plate or tray differs from ordinary plates, in that it has a well for the cup, and, in some styles, is not completely round but has indentations to form a lug for holding it. The plate is, in fact, a combination plate and saucer. When the cup is placed upon the plate, the space remaining is sufficient only for a piece of cake, small sandwiches, cookies, or ice cream. Use of the articles eliminates the need for a separate plate and a separate saucer, making it possible to carry the food and drink in one hand and to consume the refreshments without having to place the cup and plate upon a table.

On the other hand, when food and drink are served at meals at the table, it is customary to use a plate for the food and a cup and saucer for the beverage. There is no need for conserving space, nor is it necessary to hold any of the dishes in the hand, except the cup when drinking.

The shape of the plate before us, the position of the well, and the size of the articles indicate that they are meant to be used for the service of light refreshments away from the table.

In view of the testimony of the witnesses and the characteristics of the articles themselves, we think it is a proper deduction that they would be used in substantially the same manner in one section of the country as in another and that such use is not in the service of meals at the table but in the service of light refreshments away from the table where the dishes must be held in the hand or on the lap.

We hold, therefore, that this merchandise is not tableware and is properly dutiable at 45 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified, as decorated chinaware articles which are not tableware, kitchenware, or table or kitchen utensils, not containing 25 per centum or more of calcined bone.

The protests are sustained and judgment will be rendered for the plaintiffs.

### DISSENTING OPINION

DONLON, Judge: I dissent.

As the majority opinion correctly states, the testimony before us "does not establish chief use at the time of importation in an adequate geographical cross-section of the country." I agree. The cited precedents support that finding.

Turning to the samples, the majority deduce, from the exhibited characteristics of the merchandise, that in all sections of the United States these articles would be used "not in the service of meals at the table but in the service of light refreshments away from the table where the dishes must be held in the hand or on the lap."

In my opinion, the record here before us, including the sample articles that are in evidence or illustrated by photographs that were introduced into evidence, does not support such deduction.

Tableware includes dishes which may be put on the table for the service of a meal. What is a meal?

"Meal" is defined in Webster's New International Dictionary, second edition, 1956, as the portion of food taken at a particular time to satisfy appetite. I am not convinced by anything here of record that a portion of food which includes sandwiches, ice cream, cake and coffee, possibly a salad, or some combination thereof, is not a portion of food satisfying appetite at the time, in the ordinary meaning.

There is testimony of record that these articles are used "at the end of a bridge game." It is common knowledge that bridge games are played on tables. In the absence of sufficient proofs by testimony and referring, as the majority have referred, to the samples that are in evidence, it seems that these articles are equally as suitable for use in the service of food on tables as for use in the service of food away from a table. I find nothing that suggests these dishes are not suitable for use on tables.

Moreover, there is nothing in the decided cases to suggest that Congress, in using the term "tableware," had in mind only those dishes that are shown to be used for service on a conventional dining table. It is matter of common knowledge that, in many American homes, food is frequently, if not entirely, partaken of in dinettes and in living rooms or family rooms in front of TV screens. If the regular use of dishes for service of food other than on dining tables removes such dishes from the tariff category of tableware, that ruling seems not yet to have been handed down. In my opinion, there is nothing in the instant record that supports such a ruling here.

I concur with the majority that the oral testimony does not sufficiently establish the use for which plaintiffs argue. I dissent from the majority in their finding that the samples introduced into evidence suffice to supply the deficiency in proofs. In my opinion, plaintiffs have not overcome the presumption of correctness that attaches to the collector's classification. The protests should be overruled.