(C.D. 3847)

New York Merchandise Co., Inc. v. United States

United States Customs Court, Second Division

(Decided June 12, 1969)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff. *William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before Rao, Ford, and Oliver, Judges

Rao, Chief Judge: The merchandise involved in these consolidated protests consists of tie racks, coat hangers, towel racks, towel rings, toilet paper holders, soap dishes, and towel bars, imported from Japan. These articles were classified under paragraph 397 of the

Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, or by Presidential Proclamation No. 3513, 98 Treas. Dec. 51, T.D. 55816, and assessed with duty at the rate of 19 per centum ad valorem or 17 per centum ad valorem, depending upon the date of entry or withdrawal from warehouse, as articles wholly or in chief value of steel (tie racks) or of brass (all other items).

The plaintiff claims said articles are properly classifiable under paragraph 339 of said act, as modified, *supra*, as household utensils, dutiable at the rates of 12½ per centum ad valorem if of brass, or 17 per centum ad valorem if steel. An alternative claim for classification of the coat hangers under paragraph 412 of said act, as modified, as manufactures of wood, not specially provided for, dutiable at the rate of 16⅔ per centum ad valorem, has not been pressed. It is, therefore, deemed abandoned and accordingly dismissed.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 397, Tariff Act of 1930, as modified by T.D. 54108 and T.D. 55816:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \* \* \* \* \* \* \*
>
> > Composed wholly or in chief value of \* \* \* steel, \* \* \* brass, \* \* \* but not plated with platinum, gold, or silver, or colored with gold lacquer:
> >
> > \* \* \* \* \* \* \*
> >
> > > Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*) \_ 19% ad val.
> >
> > [Entries made on or after July 1, 1962 (T.D. 55816)]:
> >
> > > Composed wholly or in chief value of brass or bronze\_\_\_\_ 17% ad val.

Paragraph 339, Tariff Act of 1930, as modified by T.D. 54108 and T.D. 55816:

> Table, household, kitchen and hospital utensils \* \* \* not specially provided for \* \* \*:
>
> \* \* \* \* \* \* \*
>
> > Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—
> >
> > > Brass _____ 12½% ad val.
> >
> > [Entries made on or after July 1, 1962 (T.D. 55816)]:
> >
> > > _____ 11% ad val.
>
> \* \* \* \* \* \* \*
>
> [T.D. 54108]:
>
> > Other base metal:
> >
> > \* \* \* \* \* \* \*
> >
> > > Other _____ 17% ad val.

At trial the following eight exhibits were introduced into evidence:

Plaintiff's illustrative exhibit 1 - a photograph of a sporting tie rack.

Plaintiff's illustrative exhibit 2 - a photograph of a coat hanger, similar to the involved coat hangers.

Plaintiff's illustrative exhibit 3 - a photograph of a guest towel rack, similar to the subject towel racks.

Plaintiff's illustrative exhibit 4 - a sample of a towel ring, similar to the lion head towel ring involved herein.

Plaintiff's illustrative exhibit 5 - a sample of the subject angel toilet paper holder.

Plaintiff's illustrative exhibit 6 - a photograph of a soap dish, similar to the angel soap dish involved herein.

Plaintiff's illustrative exhibit 7 - a sample of a towel bar, similar to the dolphin towel bar involved herein.

Plaintiff's exhibit 8 - a sample of the type of screw used to affix these articles to a wall or door.

Mr. Stanley Roshkind, a buyer for plaintiff for the past ten years, was the sole witness to testify at the trial. He stated that plaintiff is in the business of importing and selling notions, novelties, housewares and brasswares to retail stores, discount houses, chain stores and department stores. In addition to serving as buyer for plaintiff, he sometimes waits on customers who come into the showrooms. He testified that he has seen items such as those under consideration in his own home and in the homes of people whom he has visited. Specifically, the tie rack is used to hold ties, the coat hooks to hold coats, the guest towel rack, the towel ring and the towel bar to hold towels, the toilet paper holder to hold toilet paper, and the soap dish to hold soap.

He further stated that all the articles, except the guest towel rack (exhibit 3), are affixed to a wall or some other structure by a screw, and that upon removal, a hole the size of the screw remains. It was his opinion that the chief use of the items was in the home and he stated that these articles are not sold to industrial establishments or motels because they are too expensive, too difficult to maintain, and too easy to remove.

On cross-examination the witness stated that he had installed articles similar to the samples in his own apartment, at which time he intended that they remain there for as long as he stayed in that home, and that upon moving to another apartment he took them with him and installed them in his new home.

Plaintiff claims the items are household utensils; the Government contends first that they are fixtures rather than utensils, and secondly that even if they are utensils, their chief use in the household has not been proved.

Plaintiff's burden is not only to prove that the collector's classification is erroneous, but also that its claimed classification is correct. *Dorward & Sons Co., Pacific Vegetable Oil Corp.* v. *United States,*

40 CCPA 159, C.A.D. 512 (1953). In the instant case plaintiff's claim for classification within the purview of paragraph 339, as modified, *supra*, rests not so much upon a disclaimer of the official classification, since the articles are conceded to be in chief value of brass or steel, respectively, as upon the assertion that these items are more specifically provided for in said paragraph 339 as household utensils. To sustain that position, plaintiff was required to show that the articles in issue are utensils, rather than fixtures, and are chiefly used in the household.

In considering the question of whether certain imported articles fall within the tariff understanding of the term "utensils," this court has often resorted to the definitions thereof set forth in *Frank P. Dow Co., Inc.* v. *United States*, 21 CCPA 282, T.D. 46816 (1933), the scope of which was noted in *J.C. De Jong & Co., Inc.* v. *United States*, 52 CCPA 26, 28, C.A.D. 852 (1965), wherein the following was said:

> * * * One definition of utensil is "something that is used; a thing serving a useful purpose." Utensil is also defined as "an instrument or implement," while one definition of an implement is "That which fulfills or supplies a want or use." * * *

Based on a consideration of the testimony of plaintiff's witness concerning the function which each of the subject articles performs, together with our general knowledge concerning the use of similar items, we have no difficulty in concluding that these articles are things which are used, or that they serve a useful purpose or fulfill or supply a want or use. That notwithstanding this conclusion, these articles are not utensils for tariff purposes because they are in the nature of fixtures attaching to realty is urged upon us by counsel for defendant, in the light of *U. Fujita & Co. et al* v. *United States*, 26 CCPA 63, T.D. 49611 (1938), wherein door knockers were held not to be household utensils. The court there stated:

> * * * considering the context and the legislative history of paragraph 339, *supra*, and the dictionary definitions of the terms "utensil," "instrument," and "implement," we are unable to accept the view that it was the purpose of the Congress to include within that paragraph articles designed to be, and, when in use, are, permanently attached to houses as fixtures, and, as such, a part of the realty. 26 C.J. 651 *et seq.* § 1 *et seq.*
>
> The term "utensil" might be said to be sufficiently broad to include door knobs. However, door knobs are designed to be, and, when in use, are, permanently attached to doors. They are, therefore, fixtures, and, as such, a part of the house or realty. Many other necessary and useful articles, such as locks, bolts, hinges, etc., are of the same class.
>
> We do not wish to be understood as holding that the term "household utensils" as used in paragraph 339, *supra*, is limited to a class of articles which, when in use, may be moved from place to place in the household. There are articles of utility which, although

attached to houses and used in the household only where attached, retain their status as personalty and are not to be regarded as a part of the realty. However, in the instant case, there is no evidence of record to establish that, when attached to doors, the involved articles do not become a part of the realty.

The collector classified the imported articles as dutiable under paragraph 397, *supra*, and, as his decision is presumed to be correct, it was incumbent upon appellants to establish that the involved articles were not fixtures but household utensils within the purview of paragraph 339, *supra*. Appellants having failed to establish such fact, the trial court properly overruled the protest.

The mere fact, however, that an article cannot function by itself or without being attached to a fixture does not preclude such article from being classified as a utensil. *Davies, Turner & Company* v. *United States*, 47 CCPA 129, C.A.D. 744 (1960); *Davies, Turner & Company* v. *United States*, 55 Cust. Ct. 488, Abstract 69651 (1965); *Globe Importing Company* v. *United States*, 47 Cust. Ct. 248, Abstract 65882 (1961); *Lipman's* v. *United States*, 52 Cust. Ct. 98, C.D. 2444 (1964), affirmed, *United States* v. *Lipman's*, 52 CCPA 59, C.A.D. 859 (1965).

In *Amerex Trading Corp.* v. *United States*, 44 Cust. Ct. 376, Abstract 63928 (1960), certain brass meat holders were classified and claimed under the same paragraphs as the merchandise here in issue. Relative to the question of whether the article was a fixture, the court, after citing *Fensterer & Ruhe et al.* v. *United States*, 5 Ct. Cust. Appls. 61, T.D. 34096 (1914), *U. Fujita & Co. et al.* v. *United States*, *supra*, and *John L. Westland & Son, Inc.* v. *United States*, 35 Cust. Ct. 292, Abstract 59419 (1955), said:

In all three of the above-cited cases, the apparent reasoning was based upon the fact that the articles were permanently affixed in the household and became part of the realty, citing C.J. 651 *et seq.*, section 1, *et seq.* The distinguishing factor relative to the merchandise at bar is that the mere attachment of it to a table or board does not constitute the article as realty.

The court then observed that:

* * * On the contrary, said article remains personalty in the same manner as would a wall can opener, a meat grinder, a towel rack, a spice holder, or a myriad of household utensils of utility which must be permanently or temporarily attached before they can function for their intended purpose.

We are of the opinion that sufficient evidence was produced to establish that the articles were utensils rather than fixtures. Part of Mr. Roshkind's testimony was to the effect that although the articles in question (except exhibit 3) cannot function without being attached to a wall or door by a screw, they can be removed easily by the use of a small screwdriver. In fact, one reason why they are not generally sold

to motels and industrial establishments is because they are so easily removable. Furthermore, the mere affixing of the articles to the wall or door does not necessarily evidence an intent to make a permanent accession to the freehold in view of the fact that they can be (and in the witness' particular case in fact were) easily removed from one home and installed in another. Nor does it appear that the holes which remain upon removal of the articles from a wall or door, being only the size of a screw, would constitute substantial injury to the freehold.

Thus the testimony of plaintiff's witness, together with the samples themselves, considered in light of the general criteria for fixtures (cf. 36A C.J.S. 586, *et seq.* § 1, *et seq.*), convinces us that the subject articles are utensils rather than fixtures.

The question remains are they such utensils as are chiefly used in the household, either for the maintenance and care of the home or for the convenience and comfort of the members of the household. *I. W. Rice & Co.* v. *United States*, 24 CCPA 114, T.D. 48415 (1936).

The general rule is that chief use is a question of actual fact which should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953). Although chief use in one state or one part of the country does not without more establish chief use throughout the United States, *Castelazo & Associates et al.* v. *United States*, 47 Cust. Ct. 137, C.D. 2293 (1961); *East-West Import Co., James G. Wiley* v. *United States*, 35 Cust. Ct. 31, C.D. 1716 (1955), in certain cases it is proper to deduce that the articles would be used in substantially the same manner and by substantially the same class of people in one section of the country as in another, and in such case evidence of chief use in a large area of the country is sufficient. *United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765 (1935); *The Fan Co.* v. *United States*, 25 Cust. Ct. 42, C.D. 1261 (1950); *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct. 428, C.D. 2832 (1966). Moreover while the testimony of a single witness may suffice in certain cases to establish chief use, the evidence given by such witness must be of a sufficiently probative character to sustain all essential facts. *Gallagher & Ascher Company* v. *United States*, 39 Cust. Ct. 1, C.D. 1892 (1957). In addition to considering the testimony it is also proper to consider the characteristics of the merchandise itself, since the presumption of correctness attaching to the collector's classification may be overcome by the probative effect of the sample. *United States* v. *Colibri Lighters (U.S.A.) Inc.*, 47 CCPA 106, C.A.D. 739 (1960).

In light of the aforementioned case law, and other cases urged by plaintiff, we have considered both the testimony of plaintiff's witness

and the character of the samples themselves, but we are of the opinion that plaintiff has failed to prove that the articles in question are chiefly used in the household.

The testimony regarding chief use was slight. Plaintiff's witness testified that he had actually seen the articles used in his own home and "in homes of people that I visited also." In response to a question whether he had any connection with selling the articles the witness stated: "Many times customers come into the showrooms [1] and I take care of them. I submit samples and prices through the mails." He also stated that the articles are not sold to industrial establishments or motels because they are too expensive, are difficult to maintain because they tarnish easily, and are easily removable. It was his opinion, based on his knowledge and experience, that the articles were chiefly used in the home.

In view of the total absence of any territorial indication relative to where the witness saw the articles used and as to the extent of his showroom sales activity, we are inclined to find that the witness' testimony failed to prove chief use in an adequate geographical cross section of the United States. That the usage might be substantially the same in one section of the country as in another is not significant here in light of the failure to establish chief use in any large area.

Plaintiff argues that persons in an executive capacity specifying, ordering, importing, promoting and selling merchandise are presumed to know what its chief uses are and may give competent testimony on the subject. Citing *Inter Maritime Fwdg. Co., Inc.* v. *United States*, 59 Cust. Ct. 412, C.D. 3177 (1967) (appeal 5304 dismissed May 6, 1968). While we are aware that this rule is appropriate in certain cases, nevertheless such witness must have factual knowledge and experience to support his testimony. *Voss Int. Corp.* v. *United States*, 61 Cust. Ct. 123, C.D. 3544, 287 F. Supp. 989 (1968); *Royal Cathay Trading Co. et al.* v. *United States*, 56 Cust. Ct. 371, C.D. 2662 (1966); *W. J. Byrnes & Co. et al.* v. *United States*, 57 Cust. Ct. 148, C.D. 2746 (1966). In this connection the witness testified as follows:

Q. As part of your business are you required to know the use to which these items that you purchase are to be put out by the ultimate purchaser?—A. Yes.

Q. And based upon your experience and knowledge, would you tell us what, in your opinion, is the primary or chief use of these items?—A. It would be used in the home; they would be used to hold towels or coats or soap, as I have said before.

We are not inclined to give significant weight to this witness' opinion concerning chief use since the record does not reflect sufficient experience on his part to know the chief use of the articles. In addition

[1] The location of the showrooms was not given. Presumably they are in New York City.

to the complete absence of any testimony concerning the geographical extent of plaintiff's business and the territory covered by the particular witness, the witness' opinion is further weakened by his earlier testimony that plaintiff sells to retail, discount, department, and chain stores, which is hardly a basis for an opinion that the merchandise is chiefly used in homes.

Nor is there anything inherent in the articles themselves to supplement the areas in which the testimonial record is deficient. While we have no difficulty perceiving the function which each of the articles performs, and we appreciate that they can be useful in the home, we find nothing about their construction and design which would lead us to conclude that they are chiefly used in the household rather than in places other than the home. The testimony to the effect that the articles are not sold to motels or industrial establishments does not establish that the merchandise was chiefly used as household utensils, particularly where there is no evidence that plaintiff was the sole or major seller in the United States. See *Voss Int. Corp.* v. *United States*, *supra.*

For the aforementioned reasons we find that although plaintiff has established that the articles in question are utensils, it has failed to prove that they are chiefly used in the household. Except as hereinabove indicated, all claims in the instant protests are therefore overruled. Judgment will be entered accordingly.