724 F. Supp. 963

TELEFLORA PRODUCTS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83–09–01352

MEMORANDUM OPINION AND ORDER

(Dated October 16, 1989)

*Stein Shostak Shostak & O'Hara,* (*Joseph P. Cox* on the briefs and at trial, and *Marjorie M. Shostak* on the trial brief and appearance at trial), for plaintiff.

*Stuart E. Schiffer,* Acting Assistant Attorney General, (*Joseph I. Liebman* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch), for defendant.

RE, *Chief Judge:* The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Taiwan and described on the customs invoice as "wood floral containers."

The merchandise was classified by the Customs Service as "[h]ousehold utensils and parts thereof, all the foregoing not specially provided for, of wood," under item 206.98 of the Tariff Schedules of the United States (TSUS), with duty at the rate of 5.1 per centum *ad valorem.*

Plaintiff protests this classification, and contends that the imported merchandise should properly be classified as "containers and holders chiefly used for packing, transporting, or marketing merchandise, * * * of wood," under item 204.30, TSUS, or, alternatively, as "[a]rticles not specially provided for, of wood," under item 207.00, TSUS. Plaintiff contends that, under either of its alternative classifications, the merchandise is entitled to duty-free treatment under the Generalized System of Preferences (GSP).

The pertinent statutory provisions of the tariff schedules are as follows:

*Classified under:*

Schedule 2, Part 1, Subpart E:

Household utensils and parts thereof, all the foregoing not specially provided for, of wood:

 *  *  *  *  *  *  *

Other:

 *  *  *  *  *  *  *

206.98  Other .................................... 5.1% *ad val.*

*Claimed under:*

Schedule 2, Part 1, Subpart D:

Complete packing boxes, cases, and crates, and other containers and holders chiefly used for packing, transporting, or marketing merchandise, all the foregoing (except baskets and coopers' products) of wood, whether wholly or partly assembled or not assembled:

 *  *  *  *  *  *  *

204.30  Other ................................. duty-free (GSP)

*Alternative claim of plaintiff:*

Schedule 2, Part 1, Subpart F:

207.00  Articles not specially provided for,
     of wood ............................... duty-free (GSP)

The question presented is whether the imported merchandise has been properly classified by Customs, and, therefore, is dutiable as "[h]ousehold utensils * * * of wood," under item 206.98, TSUS, or is entitled to duty-free treatment, as claimed by plaintiff, as "containers and holders chiefly used for packing, transporting, or for marketing merchandise, * * * of wood," under item 204.30, TSUS, or, alternatively, as "[a]rticles not specially provided for, of wood," under item 207.00, TSUS.

In order to decide the question presented, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed. Clr. 1984). Pursuant to 28 U.S.C. § 2639(a)(1) (1982), the government's classification is presumed to be correct, and the burden of proof is upon the party challenging the classification.

After an examination of the merchandise, pertinent tariff provisions, relevant case law and the testimony of record it is the determination of the court that the plaintiff has overcome the presumption of correctness that attaches to the government's classification. For the particular entries involved in this case, the government conceded at trial that, if the imported merchandise is properly classifiable under either of plaintiff's alternative claimed classifications, it is entitled to duty-free treatment under the GSP. A question remains as to which of plaintiff's alternatives the imported

merchandise is properly classifiable under. Since both of plaintiff's claimed classifications provide for duty-free treatment, it is not necessary for the court to classify the merchandise under either provision.

The imported wood floral containers consist of wood objects, each having a flat base approximately six inches long by two and a half inches wide. Attached to the base are four rolling wheels. Fastened to the top of the base, and to one side, are painted vignettes of wood which represent the theme characters associated with one of three popular nursery rhymes: "Little Boy Blue," "Humpty Dumpty," or "Mary Had A Little Lamb."

Also attached to the base, next to the characters, is a cylindrical receptacle made up of a disc-shaped bottom and a circular top, joined by spokes of wood which are spaced equal distances from each other. The receptacle is approximately the same height of the wooden vignettes. A waterproof hard plastic insert, shaped like a small flower pot or plastic cup, fits into the cylindrical receptacle and functions as a container for the floral arrangements and plants.

Each of the models of the wood floral containers is made in a "musical" and "non-musical" variety. The wooden receptacle of the musical variety has a mechanical base and contains a music box. The music box is activated when the wood receptacle is twisted or turned.

Plaintiff, Teleflora Products, Inc., is a clearing house for florists. It serves approximately 17,000 member florists in the United States. Its chief role is to provide a wire service for its members, allowing them to place phone orders and send flowers throughout the country. In addition, plaintiff provides products and other services to its member florists.

Plaintiff's first witness was Ms. Rocky Pollitz, its vice president of industry relations. During the importation of the contested merchandise, Ms. Pollitz was plaintiff's director of product development.

Ms. Pollitz identified the imported merchandise as "floral containers." Ms. Pollitz testified that the imported floral containers were developed by plaintiff as part of its "keepsake program." According to Ms. Pollitz, plaintiff's keepsake program was a company plan to develop products, for its member florists, that would increase sales of flowers by providing floral containers "that may be something [purchasers] could keep."

Ms. Pollitz testified that plaintiff used a one page mailer, with color photographs and accompanying text, to market the imported merchandise to its members. The mailer was sent to all of plaintiff's member florists. The front of the mailer pictured the imported merchandise with a floral display. Ms. Pollitz explained that:

> We have to always stress how well it looks with flowers. It's very important we do a very descriptive part in our literature about how well flowers go.
>
> \* \* \* \* \* \* \*
>
> Then the next thing we all talk about in our promotion is how reasonable it is so the florists can make a sizeable profit by buying [our] product.

She stated that the imported merchandise was produced with nursery rhyme characters because "[t]hey were meant to appeal to small children; and also to serve as a floral container for baby arrangements \* \* \*." Ms. Pollitz noted that, typically, the imported merchandise was purchased from a florist, with an accompanying floral display, as a gift for a newborn child.

Ms. Pollitz testified that the plastic insert, which fits into the wooden receptacle on the base of the imported merchandise, is designed to contain a floral display. She added that all the containers were provided with a plastic insert, and stated that plaintiff's members had "never ordered [the imported merchandise] without" the plastic inserts. She explained that plaintiff sold the imported merchandise only to its member florists, because "[i]n order to buy a Telaflora [sic] product you must be a subscriber. That's one of the rules and regulations of our organization."

On cross examination, Ms. Pollitz admitted that, once plaintiff sells the imported merchandise to its member florists, there are no restrictions on how the florist may sell or use the merchandise. Consequently, Ms. Pollitz agreed that the members "are free to sell the imported merchandise by itself, or with flowers in it, or with plants in it, or anything else they care to place in it [.]" She stressed, however, that the floral containers were "not meant to last forever[,]" and stated that they were "made to last a period of time." She agreed that they were meant to last "longer than any floral arrangement that might be placed in them."

Plaintiff's second witness was Mr. Maurice Craig, a florist who is a member and previous officer of Teleflora. Mr. Craig stated that, as a florist, he sold the imported merchandise as a floral container. He was asked how a purchaser usually carried the imported merchandise with an accompanying floral display, out of the store. Mr. Craig responded that the customer would usually carry the product "[a]s is[.]" He denied that he would "place [the product] in another container or another retail container such as a bag." Mr. Craig stated that he had never sold the imported merchandise without a plant, or floral display.

On cross examination, the government sought to elicit testimony from Mr. Craig showing that he sold the imported merchandise by informing customers of its possible alternative uses. Mr. Craig was questioned about plaintiff's mailer, which advertised the imported merchandise. While the front of the mailer depicted the imported merchandise used as a floral container, the reverse side portrayed

the merchandise with a plant in the plastic insert. Other images on the reverse side of the mailer showed the merchandise, without the plastic insert, used as a container for an infant's toilet articles and small toys.

Mr. Craig denied "ever describ[ing] to customers any of the uses they may make of the imported merchandise after any floral arrangement or plant has served its useful purpose[.]" He did state, however, that "[w]e try to make it a second sale when we sell it for flowers because we tell them they can bring it back and have plants planted in the container."

Plaintiff contends that the imported merchandise does "not come within the common meaning of household utensils," and, therefore, has been incorrectly classified. In contrast, the government argues that "the imported merchandise, which initially serves as a container * * * for flowers and/or plants, and which is intended and designed to be reusable for plants and other personal possessions of infants and young children, are articles of utility used in the household."

It is axiomatic in customs law that tariff items "are to be construed to carry out the intent of the legislature." *Nippon Kogaku (USA), Inc.* v. *United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). In determining congressional intent, the court must determine the "common meaning" of the tariff term, and "may * * * consult dictionaries, scientific authorities, and other reliable sources of information including testimony of record." *Id.* at 92–93, 673 F.2d at 382. At the trial, plaintiff introduced a definition of the word "utensil" as "any implement or container ordinarily used in a kitchen, dairy, or the like: as, cooking *utensils*[,]" or "any implement or tool, as for use in farming, etc." *The Webster's New World Dictionary of the American Language* 1605 (1956) (italics in original). After hearing the definition, Ms. Pollitz stated that, in her opinion, the imported merchandise was not a "utensil." Both Ms. Pollitz and Mr. Craig testified that they had never heard of the imported merchandise being referred to as a "utensil." They were firm in their opinion and belief that the wood floral containers were not household utensils.

In its brief, the government cites an extremely expansive definition of "utensil." The government defines a "utensil" as "an article (as a tool, implement, or vessel) serving a useful purpose * * *." *Webster's Third New International Dictionary of the English Language* 2525 (1965). The evidence indicates that the imported merchandise could serve "a useful purpose." Clearly, serving as a floral container is a "useful purpose." Besides serving as a floral container, the merchandise could, as depicted on the reverse side of plaintiff's mailer, serve as a holder for a plant or for small articles, such as an infant's toys or toilet articles. If the government's expansive definition of "household utensil" were to be taken literally, it would

encompass a variety of articles that clearly are not "household utensils" in the tariff sense of the term, i.e., for customs classification purposes.

In *The Akron* v. *United States,* 60 Cust. Ct. 60, C.D. 3259 (1968), the imported merchandise consisted of cast-iron garden furniture. It was classified by Customs as "articles, not specially provided for, wholly or in chief value of base metal." *Id.* at 61. Plaintiff contested the classification and contended that the merchandise should have been classified as "other household utensils, not specially provided for, in chief value of metal * * *." *Id.* The Customs Court sustained the classification, and, after considering three dictionary definitions of "utensil," noted that "a utensil is an article which possesses the attributes of an implement or a tool, designed to accomplish a given objective." *Id.* at 63.

In *New York Merchandise Co.* v. *United States,* 62 Cust. Ct. 674, 674, C.D. 3847 (1969) the imported merchandise consisted of certain "tie racks, coat hangers, towel racks, towel rings, toilet paper holders, soap dishes, and towel bars * * *." It was classified by Customs as "articles wholly or in chief value of steel (tie racks) or of brass (all other items)." *Id.* at 675. Plaintiff contested the classification, and contended that the merchandise should have been classified as "household utensils," either of brass or of steel. The Customs Court sustained the classification, and defined a "utensil" as " 'something that is used; a thing serving a useful purpose[,]' * * * 'an instrument or implement.' " *Id.* at 677 (quoting *J.C. De Jong & Co.* v. *United States,* 52 CCPA 26, 28, C.A.D. 852 (1965)).

It is important to note that the *Summaries of Trade and Tariff Information* state that "[a] household utensil [of wood] for tariff purposes is an article used chiefly in the home where *it serves some useful purpose in the operation of housekeeping." Summaries of Trade and Tariff Information,* sched. 2, vol. 2, p. 97 (1968) (emphasis added). Furthermore, according to the *Explanatory Notes to the Brussels Nomenclature,* the heading for "household utensils of wood" "covers *only* those articles of wood * * * which are essentially of the nature of tableware or kitchen or household implements; *it does not,* however, *cover* goods which are primarily ornamental in character * * *." *Explanatory Notes to the Brussels Nomenclature,* vol. 2, sect. IX, ch. 44.24 (1969) (emphasis in original).

In customs classification cases it is often stated that "samples of the merchandise may be 'potent' witnesses." *Permagrain Prods., Inc.* v. *United States,* 9 CIT 426, 429, 623 F. Supp. 1246, 1249 (1985) (citing *Marshal Field & Co.* v. *United States,* 45 CCPA 72, 81, C.A.D. 676 (1958)), *aff'd,* 791 F.2d 914 (Fed. Cir. 1986). A close examination of the merchandise in question shows that it could not serve as a "household utensil," in the sense that those words are used in the Summaries of Trade and Tariff Information and the Explanatory Notes to the Brussels Nomenclature. The merchandise cannot be used in "the operation of housekeeping." Indeed, its prime function

would seem to be ornamental. The receptacle is not large enough to hold anything but very small objects. In addition, the attached rolling wheels and the overall lack of sturdiness of the merchandise make it unlikely to last any significant period of time. Since the merchandise is not a "household utensil" in the tariff sense of the term, the imported merchandise was incorrectly classified by Customs.

Plaintiff contends that the imported merchandise should be classified according to its "chief use." General Interpretative Rule 10(e)(1) of the TSUS provides that:

> (e) in the absence of special language or context which otherwise requires—
> (1) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, or articles of that class or kind to which the imported articles belong, *and the controlling use is the chief use,* i.e., the use which exceeds all other uses (if any) combined * * *.

(emphasis added). By its terms, plaintiff's claimed classification, "containers and holders chiefly used for packing, transporting, or marketing merchandise, * * * of wood," is governed by the "chief use" of the merchandise.

The "chief use" of imported merchandise "is a question of fact to be determined on the basis of positive testimony." *Riekes Crisa Corp.* v. *United States,* 84 Cust. Ct. 132, 142, C.D. 4852 (1980) (citing *L. Tolbert Co.* v. *United States,* 41 CCPA 161, C.A.D. 544 (1953)). In support of its contention, plaintiff maintains that the imported merchandise "are containers for marketing or transporting of flowers, plants, and floral arrangements, that they are all so used, and that they were designed and intended and offered and sold in the trade and commerce of the United States solely for that use."

The evidence indicates that the "chief use" of the imported merchandise was as floral containers. Plaintiff marketed the merchandise exclusively for its member florists, as decorative containers for floral displays. The trial testimony of Ms. Pollitz, and the text of plaintiff's mailer, introduced at trial, revealed clearly that plaintiff intended and hoped that the imported merchandise would stimulate sales of floral displays.

In *Venaire Shade Corp.* v. *United States,* 66 Cust. Ct. 469, 472, C.D. 4235 (1971), it was stated that "[a]lthough the manner in which an article is marketed is not, of itself, determinative of its classification, it does, of course, have obvious probative value." In this case, the government notes that the imported merchandise "is designed and intended to be part of a 'Keepsake Program' for those people who want something more than just flowers." The evidence, however, is insufficient to show that plaintiff marketed the imported merchandise as a "keepsake."

Although part of plaintiff's "keepsake program," the wood floral containers were designed and intended to be used by florists in promoting the sale of flowers. The testimony reveals clearly that they were usually sold with a floral display as a gift for a newborn child. The mailer, or promotional piece, which pictured alternative uses for the imported merchandise, was a private correspondence between plaintiff and its members, and was not for display. It was mailed to plaintiff's florist members, and not to the public at large. Furthermore, no evidence indicated that florists ever sold the imported merchandise without a floral display or plant, or that florists ever suggested to customers that the imported merchandise could be used other than as a floral container.

It is also basic in customs law that " '[c]hief use' * * * means the principal or predominant use. It does not envision exclusive use, but rather contemplates the usual and common use." *Howland* v. *United States,* 53 CCPA 62, 64, C.A.D. 878 (1966). As stated by the Customs Court, " '[a] fugitive use or a mere susceptibility or capability of use is not controlling as to such chief use.' " *Riekes Crisa Corp.,* 84 Cust. Ct. at 145 (quoting *United States* v. *Baltimore & O. R.R.,* 47 CCPA 1, 5, C.A.D. 719 (1959)). In light of the specific manner in which the imported merchandise was overwhelmingly used, its use as a container for small articles, such as an infant's small toys or toilet articles, is a "fugitive use."

While it is clear that the imported merchandise is "chiefly used for packing, transporting, or marketing merchandise," there remains a question as to whether it is more properly classifiable as "[a]rticles not specially provided for, of wood," plaintiff's alternative claim. As the government notes in its brief, the imported merchandise "is not the routine usual type container used to transport and/or package merchandise in the stream of commerce."

In the *Summaries of Trade and Tariff Information,* it is stated that "those articles of wood which are not more specifically provided for. elsewhere, and used in the household as a novelty, decoration, or adornment, have been considered to be articles of wood not elsewhere enumerated (Item 207.00)." *Summaries of Trade and Tariff Information,* sched. 2, vol. 2, p. 97 (1968). According to the testimony of both witnesses, the merchandise, which is brightly colored and decorated in order to appeal to children, is also known in the floral industry as a "baby novelty."

At trial, the government conceded "that the particular items for the entries involved in this case met the requirements [for duty-free treatment] with regard to the eligibility to the [GSP]." Since both of plaintiff's alternative claimed classifications allow for GSP treatment, the imported merchandise is entitled to duty-free treatment.

It is important to note that this is a "test case," as established by Rule 84(b) of the Rules of the United States Court of International Trade, and that there are presently four cases suspended under this test case. The government has not conceded that any entries in-

volved in cases suspended under this test case have met the requirements for duty-free treatment under the GSP.

In view of the foregoing, the court has determined that plaintiff has overcome the presumption of correctness that attaches to the classification by Customs, and that the imported merchandise is incorrectly classified as "[h]ousehold utensils." Accordingly, without classifying the imported merchandise, judgment is entered for the plaintiff.